## MILLER *versus* MARSTON.

The law furnishes to the keeper of a livery stable no lien for the boarding or doctoring of horses at his stable.

ON REPORT from the *District Court*, RICE, J., presiding.

REPLEVIN, for a mare, sleigh, harness and buffalo robes.

The articles belonged to the plaintiff, and were by him placed in the care of the defendant, who was the keeper of a livery stable in Bath.

The mare remained and was boarded at that stable from August, 1849, to April, 1850. Between those dates, the plaintiff drove her to Portland, and when he returned, directed the defendant's hostler to "take the mare and use her well." The testimony showed that "the next morning she was found to be rather stiff; well used up; not lame but stiff; and that the defendant doctored her, and got her up in good shape." For the doctoring, the defendant's bill was $5,00; his whole bill for boarding and doctoring was about $100.

The plaintiff demanded the property described in the writ. The defendant refused to surrender it, claiming to have a lien upon it for the security of his bill.

The case was reported to this Court for a decision of the legal question, "whether the defendant had such a lien upon the property as to authorize him to hold the possession of it against the plaintiff, as security for the payment of the defendant's bill."

*Gilbert*, for the plaintiff.

*Tallman*, for the defendant.

HOWARD, J. — The defendant, as keeper of a livery stable, claims a particular lien, by operation of law, upon the property replevied, for the board of the plaintiff's mare in controversy.

A lien upon personal property, at common law, is founded on possession, actual or constructive, and the right to detain the property until some claim, in which the lien originates, is satisfied or discharged. It involves the right to an uninterrupted possession, while it exists, and is lost, or waived when possession is voluntarily surrendered.

The owner of a horse put at livery has the right to use and possess it at all times; and hence it is, that the keeper has no lien upon it for the keeping. The nature of the contract between the owner and keeper is such that the elements of a lien are wanting.

The doctrines of particular liens, as applicable to innkeepers, and those who are bound to receive goods, and to bailees for hire, who by their labor and skill impart additional value to the goods, have never been extended by the common law to keepers of livery stables, or agistors of cattle. *Chapman* v. *Allen*, Cro. Car. 271; the case of an Hostler, Yelv. 67, f. n. 1; *Yorke* v. *Greenaugh*, 2 Ld. Ray. 868; *Bevan* v. *Waters*, 3 Car. & Payne, 520; *Jackson* v. *Cummins*, 5 Mees. & Welsb. 342; *Grinnell* v. *Cook*, 3 Hill, 485, 491; Story on Agency, § 361, 367.

If the defendant had taken the horse to be kept and cured, as in the case of *Lord* v. *Jones*, 24 Maine, 439; or to be kept and trained for a race course, (as in *Bevan* v. *Waters*, 3 Car. & Payne, 520,) or for some other special purpose besides the keeping, he might have been entitled to a lien. But in this case there was no proof that the defendant was to keep the plaintiff's mare for any special purpose, or in a manner different from his ordinary mode of keeping horses in his livery stable. The charge for "doctoring her," may have been reasonable; but it was for incidental services rendered in the usual course of keeping, and without any special contract therefor, and cannot create a lien by contract, by usage, or by the particular circumstances of the case.

But if the defendant had a lien upon the mare for her keeping, he cannot, on that account, detain the sleigh, and harness, and robes, replevied. A particular lien for the keeping must be restricted to the thing kept. It is a claim *in rem* which the keeper cannot extend to other property.

A default must be entered, according to the agreement.

SHEPLEY, C. J., and TENNEY, RICE and APPLETON, J. J., concurred.