## CROSS v. WILKINS.

Where the value of the defendant's board at a hotel in Newport, from May to October, 1860, was in issue, it was held that the admission of the price of board at a similar hotel in Claremont, ten miles distant, in November of the same year, was within the discretion of the court.

An inn-keeper who is accustomed to take boarders, is a boarding-house keeper, within the provisions of the statute of June 27, 1859 (ch. 2230), and has a lien upon the horse of his boarder for his own fare and board, but not for the keeping of the horse.

When, by reason of erroneous instructions, a verdict is for too large a sum, the defect may be cured by a *remittitur*, if the excess can be clearly ascertained by computation.

ASSUMPSIT, for board of the defendant, keeping his horse, and care of his carriages, &c.

The defendant filed in set-off an account for labor and services, use of his horse, and a brush and other articles sold. Upon the trial, the parties differed as to most of the charges, both as to the time and price, and some of the charges were denied wholly.

The plaintiffs offered as a witness, as to the price of board and horse keeping, Charles H. Abbott, who testified that he was, and had been for ten months past, a hotel keeper at Claremont. The defendant objected to his admission, on the ground that the evidence that he could give was too remote as to time and place, and otherwise; Claremont being ten miles from Newport, where the cause of action arose, and his knowledge of prices extending only to November, 1860, while the charges upon the accounts in controversy extended from May to October, 1860. But the court admitted the evidence, and the defendant excepted.

The evidence tended to show that the defendant commenced to live at the plaintiffs' tavern, for a part of the time for which the keeping of his horse was charged, in their employment as a bar keeper, but subsequently gave notice to the plaintiffs that from that time he would remain as a boarder, and he was charged as such.

One item of the plaintiffs' account was for keeping the defendant's horse twenty-three days in October, charged at $9.82. It appeared that, on the 16th of October, a dispute having arisen between the parties respecting the matters embraced in this suit, the defendant left the plaintiffs' house, proposing to take his horse with him ; but the plaintiffs detained the horse and other personal property of the defendant in their house, claiming a lien thereon for the keeping of the horse and the board of the defendant, from that time to the 23d of October, when they commenced this suit and caused the horse to be attached. The defendant contended that the plaintiffs could not recover pay for keeping the horse from the 16th to the 23d of October, on the ground that they had no lien upon the horse, and, therefore, they detained it wrongfully.

It was contended that, by the common law, the defendant, being a boarder and not a guest, the plaintiffs, as tavern keepers, had no lien for his board. But the court instructed the jury that, by the statute of 1859, a lien was given to the keepers of boarding-houses for the fare of their boarders, and this provision extended to the case of inn-keepers who should keep boarders not properly guests ; and the lien given by the law extended to cover the keeping of the boarder's horse at the inn-keeper's stable, as well as his own board. To this instruction the defendant excepted.

The court instructed the jury that, if the plaintiffs rightfully detained the horse of a boarder, under a claim of a lien for his board and horse keeping, and afterward relinquished their lien by an attachment of the horse, they were still entitled to pay for the keeping, until the attachment was made ; and the defendant excepted.

The defendant asked the court to instruct the jury that the statute of 1859 did not apply to inn-keepers, but was intended to apply to boarding-house keepers as a distinct class, and did not extend the common law as to inn-keepers ; and, if otherwise, the statute gave a lien upon such baggage and effects as were brought by such boarder to their respective boarding-houses, and not upon such animals as were brought to their barns ; and that such lien, whether applying to animals kept in such barns or not, would only exist until the proper charges due to such boarding-house keeper,

for the fare and board of such boarders at the house, should be paid, and did not exist upon the baggage and effects of boarders for the keeping of horses at their barns. But the court declined to give such instructions, and the defendant excepted.

The court, in the charge to the jury, made various suggestions upon the bearing of the evidence as to dates and prices, upon the amounts which should be charged and allowed, and computations of the balance, as they should find the claims on the one side or the other proved or otherwise. The defendant excepted to the charge on this account, contending that the jury should be left to make such castings and computations as to them should seem proper, under the direction of the court as to the law.

The jury having found a verdict for the plaintiffs, the defendant moved that it might be set aside, by reason of said exceptions.

*Burke & Wait,* for the plaintiffs.

*A. & S. H. Edes,* for the defendant.

BELLOWS, J. Upon questions of value, the market price in the vicinity, including both place and time, may be given in evidence; but there is no rule which fixes the distance or time within which such proof may be received, and, from the nature of the case, there can be none. Very much, then, must be left to the discretion of the judge who tries the cause to determine, under the circumstances of the particular case, what are the boundaries, as to distance of time and locality, between that which may shed some light upon the issue, and that which is too remote to be useful. As to some things, their value might depend upon the state of a distant market, while, as to others, the state of the home market alone would furnish any guide.

So in respect to time. As to some things, the fluctuations of the market are great and rapid, while, as to others, slow and slight. But, with all the circumstances before the judge, there would rarely be any practical difficulty in deciding what is too remote to be of service in finding the issue; and even if evidence beyond a reasonable range should be admitted, it would, in most cases, be simply immaterial.

In the case before us, the value of the defendant's board at a hotel in Newport, from May to October, 1860, was in question; and we see no objection to evidence of the price of board in November of the same year, at a similar hotel in Claremont, a distance of ten miles from Newport.

As to the difference in time, the case of *White* v. *Concord Railroad,* 30 N. H. 208, is in point. There the price of a similar colt sold in the spring was admitted to show the value of the one in question on the 24th of the succeeding June. And in the case of *Carr* v. *Moore,* 41 N. H. 131, a sale one year after was held admissible in the case of a horse. In the case of *Thornton* v. *Campton* (Grafton county, not yet reported), it was held that a sale of the land in

question in March, 1816, was admissible to show its value in April, 1814. The price of board in a neighboring town, under some circumstances, might be of little value; and so in relation to different parts of the same town; but, under other circumstances, it might aid a jury materially.

In this case the board was furnished at a hotel; and its cost to the plaintiff, and its value to the defendant, might, in some degree, depend upon the character of the room and other accommodations furnished him; and it is quite easy to see that no instance of similar accommodations, about the same time, could be found in the immediate neighborhood.

The general views we entertain are fully sustained by the Supreme Court of Massachusetts, in *Robinson* v. *Fitchburg & Worcester Railroad*, 7 Gray 92, where the question was as to the condition of the place where a collision occurred, and whether there was a crossing at that point. At the trial the court had excluded proof that there was a farm crossing there before the railroad was built, and also at the time of trial. The Supreme Court say that, without deciding that such testimony was inadmissible, nothing appears to make it so material as to render its rejection a valid ground of exception. And the judge goes on to say, that "Many questions relating to the materiality and relevancy of proof to the issue on trial, necessarily address themselves very much to the sound discretion of the presiding judge. He only can best determine whether evidence is collateral or unimportant, having before him all the facts in proof. A court of error will not, therefore, revise his decision upon such questions, except where manifest mistake is shown." Upon this point, therefore, we see no ground for disturbing the verdict.

At common law, it would seem that the plaintiffs had no lien upon the horse for the keeping, the defendant not being a guest, in the technical sense of the term, at their inn. The leading English cases are *Chapman* v. *Allen*, Cro. Car. 271; *York* v. *Greenough*, 2 Ld. Raym. 868; *Hostler's Case*, Yelv. 67. These cases decide that neither an agister of cows, nor a keeper of a livery stable, has a lien at common law; and they are fully sustained by more recent decisions of the English courts. *Wallace* v. *Woodgate*, Ry. & Mo. 193; *Bevan* v. *Waters*, 3 C. & P. 520; *Scarfe* v. *Morgan*, 4 M. & W. 270; *Jackson* v. *Comings*, 5 M. & W. 341. These cases go upon the ground that there is no obligation on the part of such bailees to keep such animals, and that nothing is added to their value by keeping. And it is also suggested that the right of the owner to use the horse and to milk the cows is inconsistent with that exclusive possession which is essential to a lien of this sort.

In this State, questions of lien have often been considered, and their general nature defined, but not in terms broad enough to embrace the case before us. See *Wilson* v. *Martin*, 40 N. H. 88; *Shapley* v. *Bellows*, 4 N. H. 347–354. In other States the doctrine of the English courts has been fully recognized. *Goodrich* v. *Willard*, 7 Gray 183; *Grinnel* v. *Cook*, 3 Hill 491; *Miller* v. *Marston*, 35 Me. 155; *Fox* v. *McGregor*, 11 Barb. 41; *Cummings* v. *Harris*, 3 Vt. 241;

*Hickman* v. *Thomas,* 16 Ala. 666 ; 2 Kent Com. 634, 857, note (d) ; 1 Dane Abr. 232.

The question, then, is, whether there is a lien upon the horse, under the statute of June, 1859, (ch. 2230), which provides, " That all boarding-house keepers shall have a lien upon the baggage and effects of their guests and boarders, except seamen and mariners, brought to their respective boarding-houses, until all the proper charges due to such keepers, for the fare and board of all such guests and boarders, shall be paid."

Upon a careful examination of this law we think it embraces inn-keepers, who, in addition to their business as inn-keepers strictly, also take boarders. The language is certainly broad enough to embrace them, and they are clearly within its equity; and there is nothing in the nature of the case, or in any view of public policy, that calls for a different construction. On the contrary, a large part of the boarders, within the meaning of this law, throughout the State, are to be found at the hotels ; and we can see no reason for excepting them from the operation of this law. Such keepers of boarders, then, being entitled to a lien upon their baggage and effects for their fare and board, the question is, whether the term effects includes a horse kept in such inn-keeper's stable.

At common law the lien of an inn-keeper undoubtedly extended to his guest's horse and carriage, and for every part of the bill ; otherwise there might be nothing upon which the lien could take effect. And we see no good reason for giving this law a construction that should restrict the lien of the boarding-house keeper within narrower limits than exist in the case of an inn-keeper. The lien of the latter extends, in general terms, to the goods of his guest which are brought to his house ; and the term effects, in the law under consideration, is at least as broad. It would, indeed, include the clothes actually upon the person of his guest; but, interpreted in the light of the decisions touching the inn-keeper's lien, there could be no pretense for holding that the boarding-house keeper would have the right to strip the clothes from the person of his boarder. In the case of the inn-keeper, this was distinctly settled in *Simbolf* v. *Alford,* 3 M. & W. 247.

In determining the extent of the boarding-house keeper's lien, and its limitations, we must, then, look to the decisions which apply to the case of inn-keepers, and which must have been in view of the Legislature at the making of this law. We do not mean to say that the boarding-house keeper is placed, in all respects, upon the same footing with the inn-keeper ; but that the term, baggage and effects, in the statute before us, covers, substantially, the same things as the lien of the inn-keeper upon the goods of his guest.

It is true that the lien conferred by this statute is in terms only for the fare and board of the guest or boarder ; and it may be urged that the Legislature did not contemplate the case of a boarder taking with him his horse and carriage, and it is quite possible that such a case was not considered ; but still, as the terms are sufficient to embrace such effects, and they come within the equity of the

statute, we think the lien for the defendant's board, as in the case of the inn-keeper, will rightfully extend to his horse.

This is a remedial statute, and ought to have a liberal construction; and besides, as between debtor and creditor, the doctrine of lien is equitable, and the courts are inclined to favor it. *Kirkman* v. *Shawcross*, 6 T. R. 17; *Jacobs* v. *Latour*, 5 Bing. 130.

We are, however, of the opinion that the statute creates no lien for the keeping of the horse, but only for the fare and board of guests and boarders. Such is the language of the law, and we perceive no ground for going beyond its terms. The instructions of the court upon that point were, we think, erroneous; and the verdict must be set aside, unless the objection is removed by a *remittatur*. This may be done, if the excess can be ascertained by computation. *Odlin* v. *Gove*, 41 N. H. 465, and cases cited. But, upon the case as drawn, there is no means of determining what portion of the $9.82 charged for horse keeping in October, is for the keeping after the defendant had demanded the horse on the 16th day of that month; and it may, therefore, be necessary to remit the whole, and, perhaps, something for interest. The case may, however, be continued *nisi*, if desired, to enable the plaintiff to decide what is best to do.