Lord v. Jones.

## Nathaniel Lord *versus* Nathaniel Jones.

In this State no person can lawfully assume to be an innkeeper, without
first obtaining a license therefor according to the provisions of Rev. Stat. c.
36, whether such person lives in a city, town or plantation, or in an unin-
corporated place where there are no such officers as the law requires to give
a license.

If a lame horse be left with a person to be kept and cured, such person has
a lien in the character of a farrier upon the horse for his cure and keeping.

And if one who was not the owner of the horse and had no authority from
him, assumes to be the owner, and as such sells the horse to the person
who had kept and cured it, allowing his bill for those services in part pay-
ment, this does not destroy the lien.

Replevin for a horse.   With the general issue the defend-
ant, by brief statement, alleged that he had a legal claim or
lien upon the horse for the keeping, care of and medicine
for him.

H. Pond once owned the horse, and in September, 1841,
contracted to sell him to Jefferds, then and still insolvent.   It
was then agreed that the plaintiff should indorse a note from
Jefferds to Pond, that Pond should convey the horse to Lord

for his security, and that Lord should convey the horse to Jefferds, when the note was paid. This was done, and Jefferds took the horse into his possession. Lord was obliged to pay the note, and he has never been repaid by Jefferds. The horse was taken to Houlton by Jefferds and left there. He employed a man to take the horse, then lame, to Bangor, who set out for that purpose, and after proceeding about a dozen miles, found the horse too lame to go further. After some objection, the defendant, then keeping a public house at Mattawamkeag Forks, an unincorporated place, and having no license, consented to take the horse, and kept him in his possession, until he was taken by the plaintiff by this writ of replevin, in December, 1842. The horse continued lame for a long time, and the defendant took care of him, and doctored him, and furnished the medicine. The person who brought the horse to Jones, stated to him, that it was the property of Jefferds. In March, 1842, Jefferds saw the defendant, and sold the horse to him fo $70, allowing $35, for the care and keeping of the horse, and receiving payment for the balance. Jefferds did not inform Jones, that the horse belonged to the plaintiff. A witness testified, that at the time they went to replevin the horse, Jones said he had sold it to his brother. He had made no such sale, as stated by the brother, and the horse had been in his possession from the time it was left, until it was replevied.

At the trial, before SHEPLEY J. the plaintiff objected to the testimony in the depositions to show, that the defendant was an innkeeper, and contended that he was not entitled to a lien as such, and requested the Judge so to instruct the jury. The report states, that the jury were instructed on various points arising in the case, which are not the subject of complaint. The presiding Judge instructed the jury, that they might consider the defendant, under the facts proved in the case, if they believed the testimony, as entitled to a lien upon the horse for his keeping and cure, while lame at the defendant's stable. If these instructions were incorrect, the verdict for the defendant was to be set aside, and a new trial granted.

*T. J. D. Fuller*, for the plaintiff, said that the plaintiff was the owner of the horse, and therefore was entitled to the possession of him, unless the defendant could retain him against the owner by some right of lien. He contended, that the instruction of the Judge on this point was erroneous.

There cannot be an innkeeper in this State without a license. Rev. Stat. c. 36, § 17. This statute extends over the whole State, and there are no exceptions. If there be no such board of officers as can grant a license in an unincorporated place, it cannot change the law, and merely shows, that the defendant was not an innkeeper. 14 Johns. R. 231; 2 Kent, 596.

And if the defendant had been an innkeeper, there could have been no lien in this case, as the horse was merely left to be kept, without the owner, or person having it in custody, going there as a guest at any time. *Grinnell* v. *Cook*, 3 Hill, 485.

The defendant was not a farrier, or horse doctor, and did not pretend to be such. It is therefore unnecessary to inquire, whether he could be entitled to a lien as such. But the authorities are opposed to any such lien.

But had any lien once existed, it was destroyed, when he adjusted his bill with Jefferds, and took pay for it in the purchase of the horse. He did not pretend to hold under his lien after that. And the sale of the horse by him to his brother would have had the same effect, had any lien remained. Story on Agency, § 366; *Jacobs* v. *Latour*, 5 Bingh. 130; *Legg* v. *Willard*, 17 Pick. 140.

*Hobbs*, for the defendant, contended, that he had a lien upon the horse, for its keeping, as an innkeeper. An innkeeper may be defined to be the keeper of a common inn for the lodging and entertainment of travellers and passengers, their horses and attendants, for a reasonable compensation. It is sufficient, that the defendant kept an inn in fact. Story's Bailments, 310; Bac. Abr. Inn & Innkeeper. If a traveller leaves his horse at an inn, he is to be deemed a guest. Story's Bailm. 311.

The defendant lived in an unincorporated place, where no license could be procured; and assuming the business of an innkeeper, he was bound to discharge the duties of one. By placing the horse in the custody of the defendant, it was subject to a lien for its keeping. Whitaker on Lien, 117; 1 Salk. 388; 2 Ld. Raym. 860. The want of title in Jefferds does not deprive the defendant of his lien. Whitaker, 117; 9 Pick. 285.

The defendant was an innkeeper at common law, and as such had a lien. Story's Bailm. 306; 2 Kent, 591; *Mason* v. *Thompson,* 9 Pick. 285; Jeremy's Law of Carriers, 139. No license was necessary. 2 Roll. 84, 345, 348; Cole's case, 8 Co. R. 63; 1 Smith's Leading Cases, 46. The statute is but in affirmance of the common law, and never could have been intended to apply to those living where no licenses could be obtained.

But if the defendant had not a lien as innkeeper, he had one as an agister. Story's Bailm. 289. And if not, he had a lien upon the horse for its cure and keeping, as a farrier. 2 Kent, 634; Story's Ag. § 354, note 2. The right of lien has been much enlarged and extended of late years. Story's Ag. § 354.

The opinion of the Court was drawn up by

SHEPLEY J. — The instructions in this case authorized the jury to find, that the defendant was entitled to a lien upon the horse for his keep and cure. It is insisted for the plaintiff, that they were erroneous. For the defendant, it is contended, that they may be sustained on the ground, that he was an innkeeper; and the facts proved would be sufficient to entitle him to be so considered by the rules of the common law. In this State no person can lawfully assume that character without first obtaining a license therefor according to the provisions of the statute, c. 36. The seventeenth section of that statute provides, that no person shall be a common innholder, except such person be duly authorized therefor. It is said, that the provisions of this statute should be considered as limited to

cities, towns and plantations, in which alone licenses can be obtained. That a construction, which would include the unincorporated places in our new settlements, would prevent their legal existence there. Such may be the result, and it may be desirable, that the law should be otherwise; but that would not authorize the Court to except all those parts of the State, when the language is general, and operative over every part of it, without finding any such exception in the statute. If the defendant could be considered as an innkeeper, it is doubtful, whether he would be entitled in that character to a lien in this case. Neither the owner of the horse nor the person, to whom he was entrusted, was entertained at the inn, when the horse was left with him; and the decided cases are at variance, whether a lien exists under such circumstances. The case of *Mason* v. *Thompson*, 9 Pick. 280, would be favorable; and the case of *Grinnell* v. *Cook*, 3 Hill, 485, opposed to it. The defendant may, however, sustain the lien in the character of a farrier, or person having the horse entrusted to him to be kept and cured. The testimony shows, that the horse was left with him for that purpose, and that he caused him to be kept and cured. Some difference of opinion will be found in the earlier cases, whether he would, under such circumstances, be entitled to a lien. 21 Hen. 6, 55; Keil. 50; *Benan* v. *Currint*, Sayer, 224; *Ex parte Deeye*, 1 Atk. 228; *Ex parte Ockenden*, idem 236. In more modern times the Courts have been favorable to the existence of particular, and less so to general liens. In the case of *Savill* v. *Burchard*, 4 Esp. R. 55, Lord Kenyon said, the courts of law, and the understandings of people in general, had gone much in favor of these liens. In *Jacobs v. Latour*, 5 Bing. 130, Best C. J. observed, that as between debtor and creditor, the doctrine of lien was so equitable, that it could not be favored too much. That spirit is found pervading the latter treatises and decisions. Kent states, that "the law has given this privilege to persons concerned in certain trades and 'occupations, which are necessary for the accommodation of the people. Upon this ground common carriers, innkeepers, and farriers,

had a particular lien by the common law." And that "the same right applies to a miller, printer, tailor, wharfinger, or whoever takes property in the way of his trade or occupation to bestow labor or expense upon it." 2 Kent. 634.

Story also states, that a bailee, for work on a thing, has a lien upon it for the amount of his compensation. Story on Bailm. § 440. And that salvors, innkeepers, common carriers, farriers, blacksmiths, tailors, shipwrights, and other artisans, have such a lien. Story on Agency, § 355. That a printer had a lien on the printed sheets for compensation for printing them was decided in the case of *Blake* v. *Nicholson*, 3 M. & S. 167. That a miller had upon the meal, which he had ground, in the case of *Chase* v. *Westmore*, 5 M. & S. 180. And that a stable keeper had upon a horse sent to him to be kept and trained for the race course, in *Benan* v. *Waters*, 3 C. & P. 520. The cure of a lameness or disease to which the horse was subject, would seem to be a service quite as meritorious, and as much deserving the favor of the law, as the training him for a race course. Best C. J. did not however found his opinion upon the particular merit of that service but upon the doctrines of the common law. "For I take it (he says) to be a common law principle, that if a man has an article delivered to him, on the improvement of which he has to bestow trouble and expense, he has a right to detain it until his demand is paid." These authorities would authorize the instructions in this case, unless the testimony shows, that the defendant, by some act of his own, had waived or destroyed his lien. He cannot properly be considered as having waived, or as intending to waive it, by his contract with Jefferds to receive the horse in payment of the amount due to him, paying the difference in value, when he obtained no title by that contract, because Jefferds had no authority to make it. By that want of authority the contract became ineffectual and inoperative for any purpose. And if, as some of the witnesses state, the defendant said, he *had* sold the horse to his brother, while he supposed his own title to be perfect, that would not show any intention to waive his lien. It might

have defeated it, if there had been proof of an actual sale and delivery. That his brother could have obtained no title by any such attempted sale is apparent, for the defendant could not sell that, which he did not own. The defendant, without any fault on his part, having been led into these inoperative proceedings by the deceit of Jefferds, should not be prejudiced by them. His compensation for the keep and cure of the horse still remained unpaid, and the horse still remained in his possession. *Judgment on the verdict.*