**MAINE STATE SOCIETY FOR the PROTECTION OF ANIMALS**

v.

**Earl WARREN et al.**

Supreme Judicial Court of Maine.
Argued March 5, 1985.
Decided May 20, 1985.

Preti, Flaherty & Beliveau, Harold C. Pachios (orally), Mary P. Mitchell, Portland, for plaintiff.

Ronald J. Cullenberg (orally), Farmington, for defendants.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Plaintiff Maine State Society for the Protection of Animals (S.P.A.) appeals from the summary judgment entered in the Superior Court (Cumberland County) denying S.P.A.'s claim of a statutory lien under 17 M.R.S.A. § 1211 (1983) (the cruelty-to-animals statute) on ten horses owned by defendants Earl and Joy Warren of Chesterville. Finding that S.P.A. fails to bring itself within the lien provisions of section 1211, we affirm the Superior Court's decision.

The facts pertinent to the present appeal are not in dispute. On May 29, 1984, a State humane agent employed by the Department of Agriculture, suspecting that the Warrens were not adequately feeding their horses, filed in the District Court (Farmington) an application for process to take possession of the animals under section 1211. The District Court entered an *ex parte* order granting the Department's application to take possession of the horses pending a hearing on the issue of abuse. Pursuant to that order, the Department seized the ten horses on May 31, 1984, and placed them with S.P.A. for care and safekeeping. S.P.A. caused the horses to be trucked from Chesterville to its facilities in Windham, and there the horses have remained ever since. Following a trial on the merits, the District Court on July 5, 1984, dismissed the Department of Agriculture's complaint. The Court found that although the horses were "somewhat underfed" when seized, their condition did not amount to a violation of the statute.

Following the District Court's dismissal of the Department's complaint, S.P.A. claimed a lien upon the Warrens' horses in the amount of $3,854.80, the sum it allegedly expended in caring for them [1] between May 31 and July 5; and, being unpaid, it refused to release the horses to their owners. S.P.A. then filed in the Superior Court the instant suit to enforce a lien against the horses under section 1211.[2] The Superior Court denied S.P.A.'s lien claim. On plaintiff S.P.A.'s appeal, we conclude that that denial was correct, for two reasons. First, since S.P.A. was not designated by the District Court to take possession of the horses, it had no standing under section 1211 to assert a lien for its expenses in caring for them. Second, section 1211 does

1. The expenses for which S.P.A. claims a lien include trucking costs, board, and the services of a veterinarian and a farrier.

2. Although the horses still remain in S.P.A.'s hands, S.P.A. asserts a lien only for that part of its expenses attributable to the period from May 31, 1984, to July 5, 1984.

not provide a lien in a situation, such as the present one, where the cruelty-to-animals complaint is dismissed, that is, where the applicant, here the State Department of Agriculture, does not prevail in the District Court proceeding.

Before going further, we emphasize the limited nature of the sole issue before us on appeal. As presented below, and to us on appeal, the single question to be decided is whether S.P.A. has a section 1211 lien against the Warrens' ten horses still in S.P.A.'s possession.[3] We decide that limited question without any consideration of what other relief may be available to S.P.A., whether in contract or quasicontract, against either the Warrens or the Department of Agriculture, or both.

We have stated in a somewhat different context, but with equal application here, that "because the origin of the materialmen's lien is statutory and [because it] was unknown at common law, ... all conditions precedent or prescribed by statute must be complied with, before the lienor can prevail. In other words, the lienor must bring himself within the statute." *Pineland Lumber Co. v. Robinson,* 382 A.2d 33, 36 (Me. 1978); *see also Andrew v. Bishop,* 132 Me. 447, 450–51, 172 A. 752, 754 (1934). S.P.A. fails on the facts of this case to bring itself within the controlling lien statute, section 1211.

■ We first examine the issue of standing. The Warrens argue that S.P.A. would have to be specifically authorized and directed by the District Court to take possession of the horses in order to qualify for the statutory lien. We agree. The District Court in its order merely authorized the Department of Agriculture "or some other suitable person" to take possession of the horses. It never determined that S.P.A. or anyone else was such a "suitable person."

■ We hold that the District and Superior Courts may not delegate to the Department of Agriculture, or to any other applicant for process under section 1211, the selection of the "other suitable person." Subsection 1211(2), which authorized the District Court's *ex parte* order, permits the court "to cause [an animal] to be turned over to the applicant or some other suitable person." Subsection 1211(4) provides further that "[t]he court may direct the applicant or some other suitable person to take possession of and provide for the animal pending the hearing on the process," and that a lien will be available to "persons providing for the animal *pursuant to order or direction of the court."* (Emphasis added) We read that language to mean that the only persons who qualify for the statutory lien, other than applicants, who can be only certain state officers,[4] are persons specifically identified and approved for suitability by the District Court. Obviously not the applicant, S.P.A. also does not come within the alternative category. It took possession of the Warrens' horses, not by designation of the statute or of the District Court's order entered under it, but merely by delegation of responsibility by the Department of Agriculture. We assume that S.P.A. was in fact a "suitable person" to care for the Warrens' horses at the time of the *ex parte* order's issuance, so the District Court judge could have designated it to take possession of the animals at that time. But the District Court, which was the tribunal the legislature intended should decide the question of S.P.A.'s suitability contemporaneously with its *ex parte* order, never addressed that question at all. S.P.A. thus cared for the horses not by any order of the District Court, but only by arrangement with the Department of Agriculture, which had no authority to confer

---

3. Although possessory liens did exist at common law, *see Lord v. Jones,* 24 Me. 439 (1844), S.P.A. asserts no common law lien in this case, nor is it likely that the common law would have recognized a possessory lien in a case such as this, involving the taking and retention of an animal by the attempted lienor against the will

of its owner. *See generally Lewis v. Gray,* 109 Me. 128, 83 A. 1 (1912); *Miller v. Marston,* 35 Me. 153 (1852).

4. 17 M.R.S.A. § 1211(1) lists the officials authorized to initiate proceedings under the statute.

on S.P.A. any standing to assert a lien against the horses under section 1211.

■ Other language in section 1211 reinforces our conclusion that to have standing to assert a lien, a "suitable person" must be explicitly so designated by the court ordering seizure of an animal. Regarding the selection of a suitable person to care for the animal pending a hearing on the merits, the statute provides that the animal is to be *"turned over to* the applicant or some other suitable person." § 1211(1) (emphasis added). For custody of the animal following the hearing, the statutory language is even more explicit, providing that the court "shall issue process, *directing the applicant for process or some other suitable person* to take and retain possession of ... the animal...." *Id.* (Emphasis added) Subsection 5 of the statute provides that a lien is available to "[a]ny person taking possession of any animal *as provided in this section....*" (Emphasis added) Those provisions clearly contemplate that the court must specifically designate the particular entity or individual who is to take possession of and care for the animal. By requiring that a "suitable person" be so appointed *by the court,* the statute also insures that there will be adequate court supervision of animal custody, and that the benefit of the statutory lien will only be conferred upon an entity that has been directly involved in the statutory process by its official recognition by the courts.

■ In any event, even if S.P.A. had standing to assert a lien, the District Court's dismissal of the Department of Agriculture's petition after a hearing on the merits precludes any lien from arising under section 1211. Subsection 4 of that section provides that "the persons providing for the animal pursuant to order or direction of the court [are] to have, *unless the complaint is dismissed,* a lien for their

expenses thus incurred...." (Emphasis added). The statute itself thus denies the lien when the defendant prevails. We see no reason to restrict that denial of the lien only to situations where "the complaint is dismissed" for procedural reasons rather than on the merits. No part of the subsection draws any such distinction. It is impossible to conjure up any policy consideration that would have impelled the legislature to withhold the lien if the complaint is dismissed because of a mere technical deficiency, but to grant the lien if the complaint is dismissed after a full hearing on the merits.[5] We, therefore, read the statutory language as barring the assertion of the statutory lien in any situation, broadly defined, in which a defendant is discharged of liability.

■ S.P.A. argues that the first sentence of section 1211(4), providing that "[i]n the event of the return of the animal to the owner, the owner shall pay all fees and all expenses incurred in connection with taking and keeping of the animal and providing it with care and support," entitles it to a lien in this case. We note first that that general language makes no reference to a lien, and so it is governed in that regard by the specific language appearing later in the subsection and explicitly defining when a lien is available. *See Tisei v. Town of Ogunquit,* 491 A.2d 564, 568 n. 2 (Me.1985).

It is also clear from the previous version of the statute that the above-quoted sentence has application only in a situation where the animal is returned to its owner following a determination that the owner has violated the cruelty-to-animals statute. No such determination was made in this case. Prior to its amendment in 1979, section 1211 was a single, unbroken section without subsectioning. The only changes effected by the 1979 amendment were the division of the statute into subsections, and

**5.** There is no reason to think that the legislature meant subsection 1211(4) to draw the fine line that this Court tries, not always with success, to draw between dismissing an appeal and denying

an appeal. *See Tibbetts v. Tibbetts,* 406 A.2d 78, 82 (Me.1979) (difference between "dismissal" and "denial").

the addition of subsections (2) and (3), relating to the procedure to be used for *ex parte* orders.[6] The two new subsections separated the last sentence of present subsection (1), relating to the disposition of an animal found to have been abused, from the first sentence of subsection (4), which previously had followed it without interruption. There is no reason to believe that insertion of those new subsections in any way changed the previously obvious fact that the first sentence of subsection 4 relates only to situations involving the return of an abused animal to its owner, despite the court's determination that the owner had "cruelly failed to take care of it and provide for it." Section 1211(1).

 Neither does section 1211(5) provide S.P.A. with a lien on the Warrens' horses.[7] That part of the statute we read merely to enumerate the expenses recoverable when the statute otherwise under section 1211 grants a lien, and to specify the procedure for asserting the lien. The contrary reading that S.P.A. urges, that the words "[a]ny person taking possession ... shall have a lien" override the limitation on the lien's availability in subsection 4, would destroy any meaning of that limitation. Where possible, we will interpret a statute so as to preserve the meaning of all of its constituent parts. *See Opinion of the Justices*, 460 A.2d 1341, 1346 (Me.1982). In the present case, by refusing S.P.A.'s construction of the statute, we do exactly that.

Our decision today does not foreclose the possibility that one caring for an animal pending a hearing on the issue of abuse (even though it resulted in a finding favorable to the owner) might be entitled to a money judgment against the animal's owner for the reasonable expenses incurred in

providing for it. That question, however, is not before us. We strictly confine ourselves to deciding whether the section 1211 lien is available to S.P.A. in the circumstances of this case. Our answer is in the negative.

The entry is:

Judgment affirmed.

All concurring.

**6.** The amendment also added animal control officers to the list of persons authorized to petition the courts for relief under the statute.

**7.** 17 M.R.S.A. § 1211(5) reads in full:
5. Lien. Any person taking possession of any animal as provided in this section shall have a lien thereon for his expense of furnishing the same with proper shelter, nourishment and care, and may enforce the lien in the same manner as liens on goods in possession and choses in action. The court in giving judgment for the lien shall include thereon a pro rata amount for pasturage, feed and shelter, provided by the lienor from the date of the commencement of proceedings to the date of the judgment or final disposition of the animal as ordered by the court.