ESTATE of Lewis STONE

v.

James B. HANSON, Jr. et al.

Supreme Judicial Court of Maine.

Argued Jan. 4, 1993.
Decided March 1, 1993.

David J. Fletcher (orally), Fletcher, Foster & Mahar, Calais, for plaintiff.

William A. Lee (orally), Sherman, Sandy & Lee, Waterville, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, and RUDMAN, JJ.

CLIFFORD, Justice.

This case, involving a dispute over the title to an island in Cathance Lake in the town of Cooper, comes to us on report. *See* M.R.Civ.P. 72(b). We are asked to construe 14 M.R.S.A. § 816 (1980),[1] govern-

---

**1.** 14 M.R.S.A. § 816 (1980) provides:
No real or mixed action for the recovery of uncultivated lands or of any undivided fractional part thereof, situated in any place incorporated for any purpose, shall be commenced or maintained against any person, or entry made thereon, when such person or those under whom he claims have, continu-ously for the 20 years next prior to the commencement of such action or the making of such entry, claimed said lands or said undivided fractional part thereof under *recorded deeds;* and have, during said 20 years, paid all taxes assessed on said lands ...; and have, during said 20 years, held such exclusive, peaceable, continuous and adverse possession

ing adverse possession of uncultivated lands. Specifically, the issue posed by the report is whether a deed from the adverse possessor himself, in a straw transaction, can constitute the "recorded deed" under which title is claimed, or whether there is an additional element of good faith that must accompany the recorded deed. We conclude that in the circumstances of this case, the claim of title by the Estate of Lewis Stone may rest on Stone's own deed.

In 1953, the defendants Hanson acquired by deed title to property along the shore of Cathance Lake and to the island in front of their land. The next year, the town of Cooper began to file tax liens against the Hansons' property for nonpayment of taxes. The liens, however, described only the mainland part of the property, not the island. Subsequently, the town foreclosed on the tax liens and sold the mainland portion of the property to a third party not involved in any way in this lawsuit. The Hansons have not used the island nor paid taxes on it since the mid–1950s.

In 1968, Lewis Stone, who, at the time, had no apparent legal interest in the island, executed a deed conveying the island to Charles Williams. Williams then deeded a two-thirds interest in common in the island to Stone and another individual, Carroll Lovely. Eventually Williams and Lovely conveyed their interests back to Stone, so that at the time of his death, based on the deeds to him from Williams and Lovely that, in turn, were based on his own 1968 deed, Lewis Stone had a record title to the island. Stone had used the island and paid taxes on it for more than twenty years.

Following Stone's death, his widow listed the property for sale. When the interest of the Hansons was discovered, Stone's estate filed in the District Court an action to quiet title. *See* 14 M.R.S.A. § 6651 (1980). The matter was removed to the Superior Court. *See* M.R.Civ.P. 76C(d). Subsequently, the

Superior Court, on the joint motion of the parties, reported the case to this court.

The acquisition of title to land by adverse possession may be based on the common law [2] or it may be statutory. Here we are concerned with the provisions of 14 M.R.S.A. § 816, in which the legislature set forth the requirements for obtaining title by adverse possession to uncultivated land in incorporated places. These requirements include a claim to the land under a recorded deed or deeds, "exclusive, peaceable, continuous and adverse possession" of the claimed land, and payment of taxes, all for a period of twenty years. In this case, the only condition set out in section 816 that the Hansons contend had not been met by Stone is the requirement that the claim be made under a "recorded deed."

The Hansons do not dispute that the document Lewis Stone executed was a deed describing the island and that the deed was recorded. Rather, they contend that Stone's deed does not satisfy the requirement of a "recorded deed" because the legislature intended that the deed relied on be accompanied by a good faith claim. Because Stone knew he had no legal interest in the island when he executed the deed to Williams, the Hansons argue that his claim of title based on that deed must fail. We do not agree.

The fundamental rule of statutory construction is that the legislative intent, as discerned from the language of the statute, controls. *Phelps v. President & Trustees of Colby College*, 595 A.2d 403, 405 (Me.1991). Words must be given their plain, common and ordinary meaning, and when the meaning of the statute is clear, there is no need to look beyond the words, unless the result is illogical or absurd. *Id.*

Section 816 provides, among other things, that the adverse possessor "claim[s] said lands ... under recorded deeds." There is nothing in the plain language of

thereof as comports with the ordinary management of such lands or of undivided fractional parts of such lands in this State. (Emphasis added.)

**2.** Common law adverse possession requires proof that possession of the land for which title

is claimed was "actual, open, notorious, hostile, under claim of right, continuous, and exclusive for a period of at least twenty years." *Emerson v. Maine Rural Missions Ass'n*, 560 A.2d 1, 2 (Me.1989) (quoting *Glover v. Graham*, 459 A.2d 1080, 1084 n. 7 (Me.1983)).

the statute adding a good faith condition, or requiring that the deed be from a person other than the adverse possessor and that that person have color of title. *See Tibbetts v. Holway,* 119 Me. 90, 92, 109 A. 382 (1920) (release deeds constitute "recorded deeds" within meaning of statute even though they convey no title). It is significant that section 816 governs adverse possession of *uncultivated* land. At common law, adverse possession is based on open and notorious possession of land, under a claim adverse to the true owner. *Emerson v. Maine Rural Missions Ass'n,* 560 A.2d 1, 2 (Me.1989). In order that adverse possession operate to deprive the prior owner of title, the possession must be so open and notorious that notice to the prior owner may be presumed. *Id.* at 3. At common law, a person claiming adverse possession without benefit of a deed can acquire title only to land physically occupied. *Banton v. Herrick,* 101 Me. 134, 137–38, 63 A. 671 (1906). This is in keeping with the requirement that possession be open and notorious. When, however, an adverse possessor claims under a recorded deed that defines and describes the extent of the land, title by adverse possession may be acquired, not just to the portion of land actually physically occupied, but to the entire lot described in the deed. This is so because the prior owner has notice of the *existence* of the claim for adverse possession by virtue of the open and notorious use of a *portion* of the land, and notice of the *extent* of the claim from the description in the recorded deed. *Id.* at 138, 63 A. 671.

 Section 816 reflects a recognition by the legislature that uncultivated land presents a different situation from cultivated land because uncultivated land will not be occupied in the same manner. *See Stewart v. Small,* 119 Me. 269, 274–75, 110 A. 683 (1920) (physical occupation of uncultivated land less intense). It would therefore be more difficult for someone claiming uncultivated land by adverse possession to sufficiently demonstrate the common law requirements of open and notorious possession so that notice to the true owner may be presumed. Thus, section 816, in requiring a person in addition to proving exclusive, peaceable, continuous, and adverse possession, to also show a recorded deed under which the claim is made, and payment of taxes, all for a period of twenty years, recognizes the reality that possession of uncultivated lands will be less open and notorious than possession of lands that are cultivated. By recording a deed, the adverse possessor delineates the boundaries of the land claimed by adverse possession. That deed also creates color of title.[3] Absent a showing of fraud or misrepresentation (e.g., a deed with forged signatures), not alleged by the Hansons in this case, a deed on record for twenty years that adequately describes the claimed land satisfies the statutory requirement of a "recorded deed."

██ Section 816, as we construe it, is consistent with the doctrine of adverse possession. By its very nature adverse possession involves an act of disseisin; that is, exclusive possession of another's land with intent to claim title. *Worcester v. Lord,* 56 Me. 265, 269 (1868). To read into section 816 a requirement that the deed relied on must have an element of good faith and cannot be a deed from the adverse possessor himself, is inconsistent with the plain language of the statute and with the fact that all claims based on adverse possession are hostile to the true owner. *See Polanski v. Town of Eagle Point,* 30 Wis.2d 507, 141 N.W.2d 281, 286 (Wis.1966) (good faith in original acquisition irrelevant when considering question of adverse possession).

The entry is:

Remanded to the Superior Court with instruction to enter judgment for the Estate of Lewis Stone.

All concurring.

---

**3.** In *John Wallingford Fruit House, Inc. v. MacPherson,* 386 A.2d 332, 334 n. 2 (Me.1978), we noted that color of title has been defined "to be that which in appearance is title, but which in reality is no title."