**CENTRAL MAINE MEDICAL CENTER**

v.

**MAINE HEALTH CARE FINANCE COMMISSION.**

Supreme Judicial Court of Maine.

Argued May 12, 1994.

Decided July 27, 1994.

June D. Zellers (orally), Skelton, Taintor & Abbott, Auburn, for plaintiff.

Marina E. Thibeau (orally), Augusta, for Maine Health Care Finance Com'n.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ.

GLASSMAN, Justice.

The Maine Health Care Finance Commission appeals from a judgment entered in the Superior Court (Androscoggin County, *Alexander, J.*) in favor of Central Maine Medical Center (CMMC) on its complaint seeking review of an order of the Commission excluding from CMMC's revenue limits certain differentials for fiscal years 1989 and 1990. The Commission contends that the court erred in determining as a matter of law that the Commission could not exclude from CMMC's revenue limit a statutory rate differential given to Blue Cross and Blue Shield of Maine (Blue Cross) for prompt payment of hospital charges on behalf of its clients. We affirm the judgment.

## I. Statutory and Regulatory Background

At issue in this appeal are CMMC's revenue limits for its fiscal years beginning on July 1, 1989 and July 1, 1990. Consistent with the nomenclature adopted by the Commission's enabling statute, these fiscal years are referred to in the record as "Payment Year Five" and "Payment Year Six."[1] The Commission is authorized by statute to set a limit on the revenue that a Maine hospital may receive for each payment year. *See* 22 M.R.S.A. §§ 382(16–A), 396 (1992 & Supp. 1993).

In establishing the statutory framework for the setting of hospital revenue limits, the Legislature recognized that hospital charges frequently are not paid by the consumer of the services, but by various public and private health insurance programs. These entities are defined in the statute as third-party payors. 22 M.R.S.A. § 382(19) (1992) (a third party payor is "any entity, other than a purchaser, which is responsible for payment either to the purchaser or the hospital, for health care services rendered by a hospital"). During the periods at issue in this appeal, the statute recognized two classifications of third-party payors: a "third party payor" as defined in subsection 19 and a "major third party payor."[2]

---

[1] A "payment year" is defined as "any hospital fiscal year which begins, or is deemed to begin, on or after October 1, 1984." 22 M.R.S.A. § 382(11) (1992). Thus, CMMC's fiscal years commencing in July of 1989 and 1990 are the hospital's fifth and sixth payment years, respectively.

[2] The statute defined a "major third party payor" as:

[A] third party payor, as defined in subsection 19, which, with respect to an individual hospital:

A. Is responsible for payment to the hospital of amounts equal to or greater than 10% of

The Commission is vested with authority to establish by rule a discount to third party payors as a differential for prompt payment of hospital charges. 22 M.R.S.A. § 396–G(3)(B) (1992). With respect to any such differentials the Commission establishes, it must "provide for revenue deductions" to reflect the differentials. 22 M.R.S.A. § 396–F(3) (Supp.1993). The version of the statute applicable to this proceeding further provided that:

[T]he commission shall establish a gross patient service revenue limit for each hospital for each payment year commencing on and after October 1, 1984. This limit *shall* be established by adding:

A. The payment year financial requirements of the hospital, offset by the hospital's available resources in accordance with section 396–E; and

B. *The revenue deductions determined pursuant to section 396–F.*

P.L.1983, ch. 579, § 10, formerly codified as 22 M.R.S.A. § 396–H, *repealed and replaced by* P.L.1989, ch. 588, § A, 32, codified as 22 M.R.S.A. § 396–H (1992) (emphasis added).[3]

## II. Factual and Procedural History

The event that triggered the present dispute was a decision by Blue Cross to discontinue its status as a "major third party payor" as of the beginning of all hospital fiscal years commencing on or after October 1, 1988. This prompted the Commission, pursuant to a formula promulgated by a regulation, to place in effect an exclusion from CMMC's revenue limit for Payment Year Five the 1.5 percent differential received by Blue Cross as a major third party payor. CMMC contested the Commission's proposed revenue limit for Payment Year Six and subsequently requested an interim adjustment

to its revenue limit for Payment Year Five. *See* 22 M.R.S.A. § 398 (1992 & Supp.1993) (authorizing adjudicative proceedings before the Commission for setting of revenue limits where a hospital contests the Commission's proposed limits, and for interim adjustment to already-established revenue limits). The two matters were consolidated for the purpose of determining, on a summary basis without an evidentiary hearing, whether the prompt payment differential paid by Blue Cross subsequent to relinquishing its status as a major third party payor must be included in CMMC's revenue limit as a matter of law. Resolution of the question in favor of CMMC would have the effect of permitting the hospital to recover the disputed revenue from subsequent payors. *See* 22 M.R.S.A. § 396–I(3)(B) and (C) (1992) (providing for adjustment of revenue limits and hospital charges in subsequent payment years to reflect underpayments in past payment years).

In November 1991, the Commission issued a written decision affirming as consistent with the applicable statutory language the formula it had promulgated by regulation, requiring that the prompt payment differential at issue not be included in the revenue limit. This decreased by $446,029 CMMC's revenue limit for Payment Year Five and by an estimated $489,981 the hospital's revenue limit for Payment Year Six. Following the resolution of certain other issues that are not material to the present appeal, the decision of the Commission became final in February 1992 and CMMC sought judicial review of the Commission's determination pursuant to 5 M.R.S.A. §§ 11001–11008 (1989); 22 M.R.S.A. § 397(4) (1992) (authorizing appeal to the Superior Court of Commission decisions) and M.R.Civ.P. 80C (providing for judicial review of final agency action). Follow-

all payments to the hospital, as that amount as determined by the commission; and

B. Maintains a participating agreement with the hospital.
P.L.1983, ch. 579, § 10, formerly codified as 22 M.R.S.A. § 382(9), *repealed by* P.L.1991, ch. 485, § 3 (effective October 9, 1991). The Legislature determined that the general provisions relating to third party payors should apply to all payors except the federal Medicaid program and abolished this distinction. *See* L.D. 1579, Statement of Fact (115th Legis.1991).

3. The current version of section 396–H requires only that the Commission "tak[e] into consideration" the revenue deductions for prompt payment and other differentials. 22 M.R.S.A. § 396–H(1) (1992). The Legislature directed that the amended version of section 396–H would apply only to hospital payment years beginning on or after October 1, 1990, *see* P.L. 1989, ch. 588, § A, 59, and therefore the amendment does not apply to CMMC's Payment Year Five or Payment Year Six.

ing a hearing, the trial court determined that provisions of 22 M.R.S.A. §§ 396–F(3) and 396–H required the Commission to incorporate in CMMC's revenue limit the prompt payment differential at issue. Accordingly, the court vacated the decision of the Commission and remanded the proceeding to the Commission for a redetermination of CMMC's revenue limits for the two payment years. The Commission subsequently filed a report with the Superior Court stating how it would recalculate CMMC's revenue limits should CMMC finally prevail. The court adopted the Commission's calculations establishing CMMC's revenue limits for Payment Year Five and Payment Year Six, and a judgment was entered accordingly from which the Commission appeals.

■ When, as here, the facts are not in dispute and the Superior Court sits as an intermediate appellate court, we review the administrative tribunal's decision directly to determine whether the Commission correctly applied the law to the facts or abused its discretion.[4] *Vector Marketing Corp. v. Maine Unemployment Insurance Comm'n,* 610 A.2d 272, 274 (Me.1992).

## III. Analysis

The Commission first contends that the trial court erred in determining that section 396–H required the Commission to incorporate in CMMC's revenue limit the prompt payment differential. The Commission argues that its treatment of the prompt payment differential is consistent with the general purposes of the Commission's enabling statute, pointing to our observation in *Seven Islands Land Co. v. Maine Land Use Reg. Comm'n,* 450 A.2d 475, 480 (Me.1982), that we will interpret a statute "in light of its evident purpose so that all of its provisions are read in harmony and are effectuated."

At issue in *Seven Islands* was the timberland owners' effort to use a grandfather clause to defeat the purposes of the enabling statute of the Land Use Regulation Commission (LURC). In adopting LURC's view that the grandfather clause did not apply, we found a "clear legislative plan" to permit LURC to prohibit timber harvesting in certain areas notwithstanding the grandfather clause. *Id.* at 481. As evidence of a clear legislative plan here, the Commission points to the Legislature's express finding that the previous, unregulated system of hospital finance "fail[ed] to assure that hospitals will charge those they serve no more than is needed to meet their reasonable financial requirements," 22 M.R.S.A. § 381(1)(B)(1) (1992), and the Legislature's determination that it was undertaking to create a regulated system that "appropriately limits the rate of increase in the cost of hospital care from year to year." *Id.* § 381(2)(A)(1).

■ The fundamental rule of statutory interpretation is that the legislative intent, as discerned from the language of the statute, controls. *Estate of Stone v. Hanson,* 621 A.2d 852, 853 (Me.1993). Words must be given their plain, common and ordinary meaning, and when the meaning of the statute is clear, there is no need to look beyond the words, unless the result is illogical or absurd. *Id.* In this case, the plain meaning of section 396–H, read in combination with the general statements of legislative purpose cited by the Commission, reveals a clear legislative plan providing that the exclusion of differentials from a hospital's revenue requirement is not among the appropriate limits on health care costs that the Legislature imposed by creating the Commission and empowering it to set hospital rates.[5] *See, e.g., Maine State Society for the Protection of Animals v. Warren,* 492 A.2d 1259, 1263 (Me.1985) (when possible, courts should interpret a statute to preserve the meaning of

---

4. Because of our decision in this case, we need not address CMMC's contention that the Commission acted arbitrarily.

5. The Commission's position, that there exists a tension between the overall goal of health care cost containment and the provision requiring inclusion of all prompt payment differentials in a hospital's revenue limit, is essentially a policy

argument, and one that may have informed the Legislature's subsequent decision to replace the requirement with a broader provision mandating only that the Commission take the effect of these differentials "into consideration" when setting revenue limits. *See* 22 M.R.S.A. § 396–H(1) (1992).

all of its constituent parts). This is in contrast to the situation in *Seven Islands,* where the reading of the grandfather clause urged by Seven Islands would have directly conflicted with other provisions of the agency's enabling statute, particularly the language vesting LURC with authority to prohibit *all* development in certain areas. *Seven Islands,* 450 A.2d at 480–81. While the Commission's logic is sound in determining that exclusion of the prompt payment differentials from CMMC's revenue requirement would serve to reduce the rates that CMMC charges for its services consistent with the statute's overriding purposes, we cannot overlook the specific provisions of the statute that requires inclusion of the differentials in the revenue requirement.

■ The Commission also contends that authority for its position derives from the statutory provision authorizing it to adjust a hospital's revenue requirements, and thus its revenue limit, to take into account changes in the hospital's need for working capital. *See* 22 M.R.S.A. § 396–D(7) (1992).[6] Pursuant to this provision, the Commission promulgated a regulation providing for a 10 percent increase in hospitals' working capital requirement to reflect the cost to hospitals of waiting for payment of hospital charges. *See* Me.Health Care Fin.Comm.Reg. 336 (June 3, 1984) and Statement of Factual and Policy Basis and Order Adopting Rule (May 25, 1984). The Commission also points to its regulation promulgating the amount of the prompt payment differential with reference to prevailing interest rates and the average lag time in payment of hospital bills. Me. Health Care Fin.Comm.Reg. 363, Statement of Factual and Policy Basis and Order Adopting Rule at 6–7 (April 18, 1985). It argues that in light of these regulations, CMMC is seeking to recover the cost of late payment twice: once by the adjustment to its working capital requirement, and again by recovering the cost of providing a discount to prompt payors. Such a double recovery, the

Commission argues, is contrary to the enabling statute. We agree that the combined effect of Regulation 336 and section 396–H may be to permit CMMC to recover some of the same costs twice, but the mechanisms adopted by the Commission for adjusting working capital and setting prompt payment differentials may not operate to defeat the plain requirement of section 396–H. "[A] regulatory agency may not do by indirection what is forbidden it to do directly." *Maine Public Advocate v. Maine Public Util. Comm'n,* 476 A.2d 178, 183 (Me.1984).

We agree with the Superior Court that the Commission erred as a matter of law by failing to comply with the legislative mandate to include in the hospital's revenue limit for the payment years in question the prompt payment differential given to Blue Cross. Section 396–H plainly compels the Commission to do so, notwithstanding the decision by Blue Cross to relinquish its status as a major third party payor.

The entry is:

Judgment affirmed.

CLIFFORD, RUDMAN and DANA, JJ., concurring.

WATHEN Chief Justice, dissenting.

I respectfully dissent. In the final analysis, this lengthy case turns on the meaning of a single word. Both the plain meaning of section 396–H and the statutory purposes are served if the word "adding" is given the ordinary dictionary meaning of "to combine (numbers) into a sum." *Webster's New World Dictionary,* 2nd ed., s.v. "add." Thus, the Commission correctly combined the financial requirements of the hospital with the "revenue deductions" specified in section 396–F. The sum, although it results from a deduction, is not in any way at odds with the plain meaning of section 396–H. I would

---

6. Section 396–D(7) provides that:
   **Working Capital.** In determining payment year financial requirements, the commission shall include an adjustment to provide for financing reasonable increases in the hospital's accounts receivable, net of accounts payable and whatever additional working capital provisions the commission deems appropriate. The commission may, from time to time during the course of a payment year, make such further adjustments with respect to working capital as may be necessary.

vacate the Superior Court and affirm the Commission.