Michael GREEN, Plaintiff,

v.

### SUNDAY RIVER SKIWAY CORPORATION, Defendant.

**Civil No. 99–58–P–C.**

United States District Court, D. Maine.

Dec. 16, 1999.

Evan M. Hansen, Robert O. Newton, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, for defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Currently before the Court is Defendant Sunday River Skiway Corporation's Motion for Summary Judgment ("Defendant's Motion") (Docket No. 9). The one remaining count in Plaintiff's Complaint[1] (Docket No. 1a), Count I, alleges that Sunday River Skiway Corporation negligently placed an unpadded snow-making hydrant in an obscured location.[2] For the reasons that follow, the Court will grant Defendant's Motion.

## FACTS

On January 13, 1997, Plaintiff was injured after colliding with a snow-making hydrant while skiing at the Sunday River ski resort owned and operated by Defendant. Defendant's Statement of Material Facts ¶ 1 ("DSMF") (Docket No. 10); Plaintiff Response to Defendant's Statement of Material Facts ¶ 1 ("PSMF") (Docket No. 13). Plaintiff, an expert skier, was skiing on the far left side of the "American Express" trail at the time of the collision. DSMF ¶¶ 1, 6; PSMF at 3. Plaintiff was skiing on the left side of the trail because skiers were congregated on the right side of the trail where a ski lift operates. DSMF ¶¶ 4, 5; PSMF at 3. Plaintiff saw the snow-making hydrant from approximately twenty to thirty feet away. PSMF ¶ 9.[3] Plaintiff determined that he could not ski to the right of the hydrant and attempted to ski to the left of

D. Michael Noonan, Shaheen, Cappiello, Stein & Gordon, Dover, NH, for plaintiff.

1. The Complaint was originally brought in the United States District Court for the District of New Hampshire pursuant to 28 U.S.C. § 1332. Docket No. 1a. The action was subsequently transferred to this Court pursuant to 28 U.S.C. § 1406(a). Docket No. 1.

2. Count II, which sought loss of consortium damages for Lori Green, was withdrawn by Plaintiff's Motion. Docket No. 4.

3. Defendant contends that the hydrant was visible from fifty-seven feet away. DSMF ¶ 9. Because the Court is considering Defendant's Motion for Summary Judgment, the Court will adopt Plaintiff's view of the facts. *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990).

the hydrant. DSMF ¶¶ 11, 12; PSMF ¶¶ 11, 12. Plaintiff had slowed down and was skiing under control, but he was unable to avoid colliding with the hydrant. PSMF ¶ 11. The hydrant was two inches in diameter and approximately two to three feet high, unpadded, and either black or gray. PSMF at 3, 4, 5. The hydrant was not on a groomed portion of the trail. DSMF ¶ 8; PSMF ¶ 8.[4]

## DISCUSSION

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Once the moving party has come forward identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any" which "it believes demonstrate the absence of a genuine issue of material fact," the adverse party may avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986).

The trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court will not, however, pay heed to "conclusory allegations, improbable inferences [or] unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). The role of the trial judge at the summary judgment stage "is not . . . to weigh the evidence and

determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

After carefully reviewing the written submissions of the parties on Defendant's Motion, and determining that there are no genuine issues of material fact, the Court concludes that Defendant's Motion will be granted because the Maine Skiers' and Tramway Passengers' Responsibility Act ("the Act"), 32 M.R.S.A. § 15217, provides Defendant with immunity from Plaintiff's claim. Many states have passed statutes providing ski areas with limited liability from tort actions. These statutes fall into two categories: specific and general.

Specific statutes list the risks which are considered inherent in the sport of skiing. These nonexclusive lists include items for which the skier expressly assumes, or shall be considered to have voluntarily assumed, the risk of loss or damage and for which there can be no recovery. General statutes provide that inherent dangers exist in the sport of skiing and that skiers are deemed to have assumed the risk of such dangers. No list of what constitutes an inherent danger is included in these more general statutes.

*Sanchez v. Sunday River Skyway Corp.,* 810 F.Supp. 17, 18 (D.Me.1993) (citations omitted).

When this Court last visited the issue of ski area liability, Maine had a general statute. *See id.* The statute did not include a list of dangers inherent in the sport of skiing. *See id.* Since that time, however, the Maine Legislature has amended the Act.[5] In large part, the new statute closely

---

4. Plaintiff offers an unpersuasive effort to dispute this fact. Plaintiff admits that the hydrant was on a portion of the trail that had not been groomed by grooming equipment. PSMF ¶ 8. Plaintiff contends, however, that the hydrant was in a groomed area to the extent that other skiers had "groomed" the area by skiing near the hydrant. *Id.*

5. Technically, the first act, 26 M.R.S.A. § 488, was modified by P.L. Ch. 472 in 1995. Later that year, the modified version was recodified as 32 M.R.S.A. § 15217, and 26 M.R.S.A. § 488 was repealed by P.L. Ch. 560.

resembles a specific statute. The operative language of the Act states that

> each person who participates in the sport of skiing accepts, as a matter of law, the risks inherent in the sport and, to that extent, may not maintain an action against or recover from the ski area operator, or its agents, representatives or employees, for any losses, injuries, damages or death that result from the inherent risks of skiing.

32 M.R.S.A. § 15217(2).

The statute defines "inherent risks of skiing" to include a laundry list of natural and man-made hazards. For the purposes of this case, the relevant portion of the statute reads as follow:

> "Inherent risks of skiing" means those dangers or conditions that are an integral part of the sport of skiing, including, but not limited to: ... hydrants, water or air pipes, snow-making and snow-grooming equipment ... and collisions with or falls resulting from such man-made objects.

32 M.R.S.A. § 15217(1)(A).[6]

The statute does not provide absolute immunity for ski areas, however. The statute concludes with the caveat that "[t]his section does not prevent the maintenance of an action against a ski area operator for: A. The negligent operation or maintenance of the ski area." 32 M.R.S.A. § 15217(8). There is no dispute that this amended version of the Act applies to the facts of this case, because the Act became effective October 1, 1996, and the events giving rise to this litigation occurred January 13, 1997.

Having established the facts and the law, Defendant's argument for summary judgment becomes self-evident: Plaintiff collided with a snow-making hydrant; the Act expressly bars an action against a ski area operator for injuries suffered from, among other things, a collision with a snow-making hydrant; ergo, as a matter of law, Defendant is entitled to summary judgment.

Plaintiff's attack on Defendant's seemingly unavoidable logical conclusion is intriguing. Plaintiff relies heavily on the final provision of the Act, which provides that suits may still be maintained for "the negligent operation or maintenance of the ski area." 32 M.R.S.A. § 15217(8) Plaintiff argues that this language creating an exception to the immunity provided to ski area operators must be read to include an action alleging the negligent operation or maintenance of snow-making equipment. In other words, Plaintiff contends that the Maine Legislature did not intend to grant ski area operators blanket immunity from any claims arising out of the operation or maintenance of snow-making equipment. To read the statute to provide such immunity, Plaintiff argues, would to be to reach an absurd result where § 15217(8) would be meaningless. Plaintiff contends, therefore, that the negligent operation or maintenance of this hydrant is the cause of

---

**6.** The full list is as follows:

> A. "Inherent risks of skiing" means those dangers or conditions that are an integral part of the sport of skiing, including, but not limited to: existing and changing weather conditions; existing and changing snow conditions, such as ice, hardpack, powder, packed powder, slush and granular, corn, crust, cut-up and machine-made snow; surface or subsurface conditions, such as dirt, grass, bare spots, forest growth, rocks, stumps, trees and other natural objects and collisions with or falls resulting from such natural objects; lift towers, lights, signs, posts, fences, mazes or enclosures, hydrants, water or air pipes, snowmaking and snow-grooming equipment, marked or lit trail maintenance vehicles and snowmobiles, and other man-made structures or objects and their components, and collisions with or falls resulting from such man-made objects; variations in steepness or terrain, whether natural or as a result of slope design; snowmaking or snow-grooming operations, including, but not limited to, ski jumps, roads and catwalks or other terrain modifications; the presence of and collisions with other skiers; and the failure of skiers to ski safely, in control or within their own abilities.

32 M.R.S.A. § 15217(1)(A).

Plaintiff's injuries, and under § 15217(8), summary judgment is therefore inappropriate, because the allegation of negligence creates a question for the factfinder to determine.

■■■ It is a fundamental tenet of statutory interpretation that the intent of the legislature, as evidenced by the language of the statute, controls. *Central Maine Medical Center v. Maine Health Care Finance Comm'n*, 644 A.2d 1383, 1386 (Me. 1994). The language of the statute must be construed "to avoid contradictory or illogical results." *Rubin v. Board of Envtl. Protection*, 577 A.2d 1189, 1191–92 (Me.1990). "Thus we consider the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Melanson v. Belyea*, 1997 Me 150, ¶ 4, 698 A.2d 492, 493 (1997). But if the statutory language is ambiguous, the Court must look beyond the language and "examine other indicia of legislative intent, including legislative history." *Id.*

The question is, therefore, squarely raised. To the extent that § 15217(1)–(2) provides broad immunity to ski area operators in many areas that relate to operation and maintenance, does § 15217(8) conflict in such a way as to create ambiguity within the plain meaning of the statute? The Court concludes that the conflict between § 15217(1) –(2) and § 15217(8) does indeed create an ambiguity in the statute. Accordingly, the Court turns to the legislative history of the Act for guidance in resolving this question.[7]

A Court's endeavor to discern legislative intent by reviewing legislative history is necessarily a journey fraught with pitfalls. Keeping these pitfalls in mind, the Court will review the legislative history of this Act. In 1979 the Maine Legislature enacted a general liability statute for ski area operators. 26 M.R.S.A. § 488. At the time of its enactment, the Maine Legislature rejected an alternative specific liability statute which included a long list of specific risks inherent in skiing. *Sanchez*, 810 F.Supp. at 18–19 (reviewing the legislative history of 26 M.R.S.A. § 488). Between the enactment of 26 M.R.S.A. § 488 and its repeal and replacement by 32 M.R.S.A. § 15217 in 1995, this Court decided *Sanchez*, 810 F.Supp. 17 (D.Me. 1993). In *Sanchez*, the plaintiff, while skiing, had been injured when he collided with a stump after falling. *Id.* at 18. The defendant, relying on 26 M.R.S.A. § 488, moved for summary judgment, arguing that colliding with the stump was an inherent risk of skiing. This Court denied the defendant's motion. This Court concluded that the general nature of 26 M.R.S.A. § 488 generated a genuine issue of material fact as to whether or not colliding with a stump was an inherent risk of skiing. *Id.* at 18–19. In other words, under the holding of *Sanchez*, it would be impossible for a ski area to obtain summary judgment under the general immunity of 26 M.R.S.A. § 488 because there would always be a question of fact as to what is an "inherent risk of skiing."

It is logical to assume that the enactment of 32 M.R.S.A. § 15217 was spurred in part by decisions such as *Sanchez*.[8] By including a specific list of inherent risks

---

7. In light of the weighty argument posed by Plaintiff's response to Defendant's Motion, the Court is surprised and disappointed that Defendant chose not to exercise its right to submit a reply brief to the Court.

8. The Court has found two other published decisions holding that, as in *Sanchez*, judgment as a matter of law was inappropriate because 26 M.R.S.A. § 488 did not define "inherent risks of skiing." *Hansen v. Sunday River Skiway Corp.*, 1999 Me 45, 726 A.2d 220

(1999); *Merrill v. Sugarloaf Mountain Corp.*, 1997 Me 180, 698 A.2d 1042 (1997). However, because both appellate opinions were published after the Maine Legislature enacted 32 M.R.S.A. § 15217, they were not considered by the Legislature. The Law Court in each case applied § 488, as opposed to § 15217, because the underlying facts in each case arose prior to the effective date of § 15217. Furthermore, the Law Court in *Merrill* expressly did not interpret § 15217. *Merrill*, 1997 Me 180 ¶ 7 n. 3, 698 A.2d 1042.

within the definition section, an approach the Maine Legislature rejected when it first enacted 26 M.R.S.A. § 488, the Legislature presumably was seeking to allow cases like *Sanchez* to be decided without the need for a trial. Portions of the debate on 32 M.R.S.A. § 15217 provide support for the proposition that the Act was passed, at least in part, for this very purpose.[9] But perhaps the strongest support for the theory that the Act was passed to respond to cases like *Sanchez* is the language of the Act itself. The statute states that "each person who participates in the sport of skiing accepts, *as a matter of law,* the risks inherent in the sport and, to that extent, may not maintain an action against or recover from the ski area operator . . . ." 32 M.R.S.A. § 15217(2) (emphasis added). The use of the phrase "as a matter of law," which did not appear in 26 M.R.S.A. § 488, convincingly demonstrates that the Legislature was seeking to respond to situations like *Sanchez.* But here, the Court encounters one of the pitfalls of legislative intent. Just as there is evidence in the legislative record indicating that the Maine Legisla-

ture was seeking to avoid cases like *Sanchez,* there is also evidence in the legislative record acknowledging the potential conflict in the Act created by § 15217(8).[10] But after being informed of this potential conflict within the statute, the Maine Legislature proceeded to enact the bill without further modification.

■ Based on the legislative history of the Act, the Court concludes that § 15217(8) allows for a suit alleging negligent operation or maintenance of a ski area so long as the suit does not arise out of any of the "inherent risks of skiing" as defined by § 15217(1). The Court concedes that the "inherent risks of skiing" are defined in such a way that it is difficult to conceive of an action alleging negligent operation or maintenance of a ski area that does not also reflect one of the "inherent risks of skiing."[11] However, the alternative reading offered by Plaintiff does much greater injury to the legislative intent underlying this Act as the Court understands it. The Act is an effort by the Maine Legislature to immunize ski area operators from claims arising out of collisions be-

---

**9.** During the debate on the bill that would become 32 M.R.S.A. § 15217, Senator Harriman made the following remarks on the record:

Current Maine law says that skiers are, when they take to a ski slope, accepting some inherent risks. Yet the definition of what inherent risks are are [sic] not spelled out and therefore, from time to time, law suits have been filed where the defendant has to incur substantial amounts of time and legal expense to demonstrate that the reason for the suit was, indeed, an inherent risk of skiing. . . . This is an opportunity to clarify what is in Maine law, and it is an opportunity to help the industry avoid itself from potential litigation.

Legis.Rec. S–1186 (1st Reg.Sess.1995).

**10.** During the debate on the bill in the Maine House of Representatives, Representative Treat stated the following on the record:

It seems to me that by just reading the bill and the language itself, I am a lawyer, but I don't practice in this area, but I find it to be extremely contradictory and it seems to me that the two situations I posed where there ought to be liability. Lets say someone

heads down the trail and they have opened up the trail for the day and a race course had been set with barricades across part of the trail. They were not removed before the trail was open. That would seem to be something that should certainly be the fault of the company operating the ski area and not the individual who was injured or, in fact, might even die in that situation. Same thing goes for ramming into snow making equipment. The problem is that when you read page 1 of the bill, it does say that it is the responsibility of the skier for collisions with or falls resulting from collisions with man made objects, which would be both of those situations. . . . The way I read it is you can bring your action, but you will never recover. That is how I read it. It says twice that you can't recover and then later on it says, but you can still bring your action. . . . I think there is a little more work that needs to be done here.

Legis.Rec. 965–66 (1st Reg.Sess.1995).

**11.** The Court resists the temptation to speculate as to what such a suit might look like. Suffice it to say that the Court is satisfied that the facts of this case implicate an inherent risk of skiing.

tween skiers and several specific natural and man-made objects. Under Plaintiff's reading of the Act, any injured skier could circumvent the immunity by maintaining that their collision with a stump, tree, lift tower, light, post, fence or hydrant resulted from negligent operation or maintenance on the part of the ski area operator by allowing the object to be where it was. Such a result would unquestionably be contrary to the legislative history of the Act.

In summary, it is undisputed that Plaintiff was injured when he collided with a snow-making hydrant. A collision with a snow-making hydrant is expressly listed as one of the "inherent risks of skiing." 32 M.R.S.A. § 15217(1)(A). "[E]ach person who participates in the sport of skiing accepts, as a matter of law, the risks inherent in the sport." 32 M.R.S.A. § 15217(2). Furthermore, a skier "may not maintain an action against ... the ski area operator ... for any losses, injuries, [or] damages ... that result from the inherent risks of skiing." 32 M.R.S.A. § 15217(2). Therefore, Defendant is entitled to summary judgment.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment be, and is hereby, **GRANTED.**