Claudia **SKLAR** and G. **Richard Heyn, Plaintiffs,**

v.

**OKEMO MOUNTAIN, INC., Defendant.**

**No. 2:92 CV 00960 (GLG).**

United States District Court, D. Connecticut.

March 6, 1995.

Sack, Spector & Barrett, West Hartford, CT (Michael B. Pollack, of counsel), for plaintiffs.

Halloran & Sage, Hartford, CT (Erin M. Kallaugher, of counsel), for defendant.

## OPINION

GOETTEL, District Judge:

Plaintiffs bring this action for damages caused by a skiing collision between Plaintiff Claudia Sklar and Defendant's employee. After a trial, the jury returned a verdict for Defendant. Plaintiffs now move for a new trial pursuant to Fed.R.Civ.P. 59.

## BACKGROUND

On February 15, 1992 Plaintiff Claudia Sklar was skiing on the Sapphire Trail at Okemo Mountain. Defendant's employee, an off-duty ski instructor, came down the trail from above Ms. Sklar and collided with her. Ms. Sklar suffered serious injuries to her wrist and leg. Ms. Sklar brought a claim of negligence and her husband brought a derivative claim for loss of consortium.

At the charging conference there was a dispute over which party should carry the burden of proof with regard to a statutory defense established by the Vermont Sports Injury Statute, Vt.Stat.Ann. tit. 12, § 1037 (1991). Section 1037 provides that "a person who takes part in a sport accepts as a matter of law the dangers that inhere therein insofar as they are obvious and necessary." After a brief hearing and informal submissions by both parties, we determined that Plaintiffs must carry the burden of proving that the collision was not a danger inherent in the sport of skiing.

We charged the jury as follows:

Finally, before determining liability based on negligence, you must consider the application of the Vermont Sports Injury Statute. That statute states in part that, 'A person who takes part in any sport accepts as a matter of law the dangers that adhere therein insofar as they are obvious and necessary.'

Thus, under Vermont law, a person who goes skiing accepts as a matter of law the inherent dangers of the sport insofar as those dangers are obvious to the participants and necessary to conduct the sport. Therefore, you must determine whether the risk of collisions between skiers is obvious or widely known by reasonable people familiar with skiing and ski areas.

You must also determine whether the risk of such collisions is necessary in the sense of being impossible or unreasonably difficult or expensive to eliminate even if both skiers exercised reasonable care. Plaintiff must prove that such collisions are not an obvious and necessary part of skiing by a preponderance of the evidence. If you find that such collisions are an obvious and necessary part of the sport of skiing, you must return a verdict for the Defendant.

We also provided special interrogatories for use in the deliberations. The jury responded affirmatively to the first interrogatory, which asked: "Is a collision such as the one in this case an inherent danger in the sport of skiing such that it is obvious to participants and necessary to the conduct of the sport?," and returned a verdict for Defendant. We entered a final judgment for Defendant on December 22, 1994.

## DISCUSSION

Plaintiffs now move for a new trial, arguing that the burden of proof under section 1037 should have been on Defendant. Pursuant to Fed.R.Civ.P. 59, we have discretion to grant a motion for a new trial where it is in

the interests of justice. 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2803 (1973).

*The Vermont Sports Injury Statute*

The precise nature of the assumption of risk defense provided in § 1037 is critical to our determination regarding the burden of proof. Thus we must now undertake a fairly detailed review of the historical development of the theory of assumption of risk in Vermont.

Prior to the enactment of § 1037, the law relating to assumption of risk and ski area liability for skiing injuries in Vermont was set forth in a federal case, *Wright v. Mt. Mansfield Lift, Inc.*, 96 F.Supp. 786 (D.Vt. 1951). *See Frant v. Haystack Group*, 641 A.2d 765, 767 (Vt.1994). In *Wright*, the plaintiff was injured when she hit a snow-covered tree stump on a ski trail. The court held that the defendants were not liable because the plaintiff had accepted "the dangers that inhere in [skiing] so far as they are obvious and necessary." 96 F.Supp. at 791. A snow covered stump was deemed to be an "obvious" danger of the sport, although it was not visible or otherwise detectable prior to impact.

Twenty-five years later another federal case unintentionally muddied the rule announced in *Wright*. In *Leopold v. Okemo Mt., Inc.*, 420 F.Supp. 781 (D.Vt.1976), a skier died after colliding with an unpadded ski lift tower. Purporting to apply the law established in *Wright*, the district court ruled that the lift tower was an "obvious" risk that the plaintiff willingly accepted. *Id.* at 787. Unlike *Wright*, however, the district court considered the term "obvious" in its more common usage: the tower was big, bright and clearly unpadded, so the risk it presented was visually apparent.

The next development came in an unreported decision by the Crittendon County Superior Court in the case *Sunday v. Stratton Corp.*, 135 Vt. 642, 381 A.2d 524 (1977). In *Sunday*, the plaintiff was injured when her ski became entangled in concealed brush on a beginner ski trail. *Sunday v. Stratton Corp.*, 136 Vt. 293, 390 A.2d 398, 401 (1978). Applying the law of *Wright*, the trial court denied the defendant's motion for a directed verdict. The court refused to find that the plaintiff had assumed of the risk presented as a matter of law, and held that the issue of whether the concealed brush was an inherent danger was a question of fact for the jury. *Id.*

The trial court's decision in *Sunday* sparked quite a furor, and led to enactment of the Vermont Sports Injury Statute at issue here before the Vermont Supreme Court could even decide the appeal. *See Frant*, 641 A.2d at 766–67. The preamble to § 1037 states:

> It is a purpose of this act to state the policy of this state which governs the liability of operators of ski areas with respect to skiing injury cases, including those resulting from both alpine and nordic skiing, by affirming the principles of law set forth in *Wright v. Mt. Mansfield Lift, Inc.*, and *Leopold v. Okemo Mt. Inc.*, which established that there are inherent dangers to be accepted by skiers as a matter of law.

1977 Vermont Pub.L. No. 119. Thus, the legislature believed that *Wright* and *Leopold* were consistent statements of the law, and that *Sunday* represented a major change. Unfortunately the legislature's interpretation of the three cases was flawed. As the Vermont Supreme Court subsequently pointed out, *Wright* and *Leopold* applied different theories of assumption of risk and are irreconcilable. *Frant*, 641 A.2d at 766–67.

■ The generic term "assumption of risk" actually encompasses two distinct concepts known as primary and secondary assumption of risk. In Vermont, "primary" assumption of risk is essentially a claim that the defendant owed no duty to the plaintiff with respect to the particular risk in question. *Id.* at 769. In contrast, "secondary" assumption of risk is an affirmative defense to an established breach of duty. *Id.* (citing *Meistrich v. Casino Arena Attractions, Inc.*, 31 N.J. 44, 155 A.2d 90, 93 (1959)).

■ *Wright* relied on the doctrine of primary assumption of risk. The risk of hitting a concealed stump was inherent to skiing in 1949, in the sense that it was obvious (i.e. known to anyone to participates in the sport)

and necessary since stump removal was impractical. The defendants thus owed no duty to protect the plaintiff from this risk. *Leopold*, however, relied on secondary assumption of risk. Regardless of whether the defendant breached a duty by placing an unpadded lift tower in the middle of the ski slope, the plaintiff was aware of the tower and the threat that it represented. Thus the plaintiff voluntarily assumed the risk of running into it.

Further, although the outcome in *Sunday* was different than in *Wright*, the two cases were actually consistent because they both applied the doctrine of primary assumption of risk. *Id.* Recognizing that § 1037 could have adopted only one of the two assumption of risk doctrines, the Vermont Supreme Court determined that the statute retained the doctrine of primary assumption of risk as applied in *Wright* and *Sunday*. *Frant*, 641 A.2d at 769. Thus § 1037 provides a defense based on primary assumption of risk.

*Burden of Proof*

To determine the proper party to carry the burden of proof, we start from the fundamental proposition that it is Plaintiffs' burden to establish the elements of their claims by a preponderance of the evidence. The burden of proving affirmative defenses, however, falls on Defendant. Thus we must determine whether § 1037 goes to an element of the claim, or establishes an affirmative defense.

■ In Vermont, the elements of a negligence claim are "the existence of a legally cognizable duty owed by the defendant to the plaintiff, breach of that duty, such breach as the proximate cause of plaintiff's injury, and actual damages." *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 622 A.2d 495, 498 (1993). Since the existence of a legal duty is an element of the claim, Plaintiffs carry the burden of proving the existence of such a duty. As described by the Vermont Supreme Court, primary assumption of risk relates specifically to the existence of a duty rather than to the availability of a defense to

an established breach. *Frant*, 641 A.2d at 768–69.

If the risk that gave rise to the accident is inherent in the sport, there is no duty and Plaintiffs have no claim. Since the burden of proving the existence of a legal duty properly falls on Plaintiffs, the burden of proving that the risk is not inherent in the sport also falls on Plaintiffs. Thus the charge properly placed the burden of proof on Plaintiffs.[1]

Plaintiffs present four grounds for their position that § 1037 provides an affirmative defense. First they look to dicta in the Second Circuit case *Dillworth v. Gambardella*, 970 F.2d 1113 (2d Cir.1992), referring to "the affirmative defense provided by § 1037." *Id.* at 1120. This single reference in a section of a federal opinion dealing with an unrelated issue is unpersuasive in light of our previous analysis based on decisions of the Vermont Supreme Court.

Second, Plaintiffs assert that by pleading § 1037 as an affirmative defense in its answer, Defendant has somehow waived or is estopped from presenting the argument that it is not an affirmative defense. Plaintiffs offer no authority for this proposition, and we find none. It does not seem sensible that Defendant could unintentionally alter the statute by the form of its pleadings. Moreover, by denying that it was negligent, Defendant had alleged that it owed no duty to Plaintiffs with respect to skiing collisions.

Third, Plaintiffs argue that section 1037 simply codified Vermont's traditional primary assumption of risk rule. We agree, but find no evidence that Vermont's traditional rule treated primary assumption of risk as an affirmative defense. Finally, Plaintiffs look to the location of § 1037, immediately following the affirmative defense of comparative negligence. This is also unpersuasive. There is no reference in the statute implying that this area of the code is reserved for affirmative defenses, or otherwise indicating such a legislative intent.

---

1. We note that the use of the word "obvious" in *Wright*, and subsequently in § 1037, has probably caused much of the confusion that the Vermont Supreme Court was forced to sort out in *Frant*. To avoid confusing the jury, we found it necessary to instruct the jury that "you must determine whether the risk of collisions between skiers is obvious *or widely known by reasonable people familiar with skiing and ski areas.*"

Based on relevant Vermont precedent, we believe that § 1037 relates specifically to the existence of a duty on the part of the defendant. As such, Plaintiffs properly had the burden of proving that the risk of the collision in this case was not a risk inherent in the sport of skiing.

## CONCLUSION

Based on the foregoing, Plaintiffs' motion for a new trial is denied.

**SO ORDERED.**