1997 ME 180

**James MERRILL**

v.

**SUGARLOAF MOUNTAIN CORPORATION.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 26, 1997.

Decided Aug. 7, 1997.

N. Laurence Willey, Jr., Laurie Ann Miller, Brewer, for plaintiff.

Keith A. Powers, Elizabeth J. Wyman, Preti, Flaherty, Beliveau & Pachios, LLC, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] James Merrill appeals from the judgment entered in the Superior Court (Penobscot County, *Kravchuk, J.*) in favor of Sugarloaf Mountain Corporation pursuant to a motion for a summary judgment. Merrill contends that the court erred when it concluded as a matter of law that 26 M.R.S.A. § 488 (1988)[1] protects Sugarloaf from liability for injuries Merrill suffered when he skied into a drainage ditch on a trail at Sugarloaf. We agree and vacate the judgment.

I.

[¶ 2] On December 26, 1993, Merrill and three friends, Jason LaGrange, Scott Hunt, and Gary Martin, skied at Sugarloaf. After lunch they were skiing on the Skidder trail, a trail marked as an expert trail at the top and as an intermediate trail at the bottom. They considered themselves to be expert skiers. As the group was skiing on the lower, intermediate section of the trail they approached an intersection with another trail and saw two crossed bamboo poles about 15 to 20 feet from the right tree line, and about 50 feet from the left tree line on the Skidder trail. According to the skiers, the trail was covered with snow from tree line to tree line. Martin stated that the trail looked groomed on both sides of the bamboo poles, and LaGrange agreed that it looked like "you could go to the right and left of [the] crossed poles[.]" Hunt stated that "both sides [of the trail] appeared to be safe for skiing." According to the ski patrol person on duty, however, only the snow to the left of the bamboo poles had been groomed that day, and the groomed edge to the left was visible to skiers.[2] LaGrange was skiing first, with the other skiers behind him, and he skied to the left of the bamboo. Merrill skied to the right of the bamboo poles and fell, breaking his ankle, when he hit a depression in the snow caused by a "water bar," a drainage ditch in the trail that extended from the crossed bamboo to the right tree line. According to Merrill, he never saw the ditch, and LaGrange stated that the ditch was not visible until one was "right up beside the poles."

[¶ 3] Merrill alleged that Sugarloaf was negligent and liable for his injuries. Sugarloaf moved for a summary judgment, contending that Merrill's fall was the result of an inherent risk in skiing and that it was not caused by Sugarloaf's negligent operation and maintenance of the ski area. The court agreed and granted a summary judgment. This appeal followed.

II.

[¶ 4] "We review the entry of a summary judgment for errors of law, viewing

---

1. 26 M.R.S.A. § 488 (1988) provides:

   It is hereby recognized that skiing as [sic] a recreational sport and the use of passenger tramways associated therewith may be hazardous to skiers or passengers, regardless of all feasible safety measures which can be taken. Therefore, each skier shall have the sole responsibility for knowing the range of his own ability to negotiate any slope or ski trail, and it shall be the duty of each skier to conduct himself within the limits of his own ability, to maintain control of his speed and course at all times while skiing, to heed all posted warnings and to refrain from acting in a manner which may cause or contribute to the injury of himself or others. Except as otherwise specifically provided in this subchapter, each skier who participates in the sport of skiing shall be deemed to have assumed the risk of the dangers inherent in the sport and assumed the legal responsibility for any injury to his person or property arising out of his participation in the sport of skiing, unless the injury or death was actually caused by the negligent operation or maintenance of the ski area by the ski area operator, its agents or employees. Except as provided in this section, the responsibility for collisions by any skier while actually skiing, with any person or object, shall be solely that of the skier or skiers involved in collision and not that of the ski area operator. This section shall not prevent the maintenance of an action against a ski area operator for the negligent design, construction, operation or maintenance of a tramway.

   This statute was repealed, P.L.1995, ch. 560, § H–9 (effective October 1, 1996), and replaced by 32 M.R.S.A. § 15217 (Supp.1996).

2. The trial court found that the area to the right of the poles was not groomed. Viewing the evidence in the light most favorable to Merrill, however, the area to the right of the bamboo poles appeared to the skiers to be groomed and safe for skiing.

the evidence in the light most favorable to the party against whom the judgment was entered." *Maynard v. Commissioner of Corrections,* 681 A.2d 19, 23 (Me.1996). We undertake an independent review of the record to determine if there is a genuine issue of material fact and if the moving party was entitled to a judgment as a matter of law. *First Citizens Bank v. M.R. Doody, Inc.* 669 A.2d 743, 744 (Me.1995). "A summary judgment is an extreme remedy and should be granted in favor of a defendant only when the facts before the court so conclusively preclude recovery by the plaintiff that a judgment in favor of the defendant is the only possible result as a matter of law." *Binette v. Dyer Library Ass'n,* 688 A.2d 898, 901 (Me.1996).

[¶ 5] 26 M.R.S.A. § 488 protects ski area operators from liability for injuries to skiers resulting from risks inherent in the sport of skiing. It provides, in relevant part:

> [E]ach skier who participates in the sport of skiing shall be deemed to have assumed the risk of the dangers inherent in the sport and assumed the legal responsibility for any injury to his person or property arising out of his participation in the sport of skiing, unless the injury or death was actually caused by the negligent operation or maintenance of the ski area by the ski area operator, its agents or employees.

Whether the ski area is protected from liability by section 488 therefore depends on whether the skier's injuries resulted from an inherent risk. If the skier's injuries resulted from a risk inherent in the sport, the ski area is not liable for those injuries because it had no duty to protect or warn the skier of such dangers. *See, e.g., Philippi v. Sipapu, Inc.,* 961 F.2d 1492, 1495 (10th Cir.1992) (skier assumes the risk of thin and bare terrain on ungroomed trails and such hazards do not give rise to duty to warn); *Verberkmoes v. Lutsen Mountains Corp.* 844 F.Supp. 1356, 1359 (D. Minn.1994) (if ATV in the trail was not an inherent risk then the presence of the

hazard gives rise to a duty to protect or warn on the part of the ski area); *Dillworth v. Gambardella,* 776 F.Supp. 170, 172 (D.Vt. 1991) (statute shielding ski areas from liability for inherent risks removes any duty owed to skiers regarding those risks), *aff'd,* 970 F.2d 1113 (2d Cir.1992). If, however, the skier's injuries were not caused by an inherent risk, there must be a determination whether the injuries were actually caused by the negligent operation or maintenance of the ski area.

[¶ 6] Here, the trial court concluded that Merrill's fall was caused by an unexpected change in terrain on an ungroomed part of the trail and that such a fall was an inherent risk associated with skiing. Sugarloaf contends the court properly made such a determination as a matter of law. We disagree.

[¶ 7] Whether Merrill's injuries were caused by risks inherent in the sport of skiing is a question of fact that must be submitted to the jury. Section 488 does not specify what risks, as a matter of law, are inherent in skiing. In the absence of such statutory specification, whether a skier's injury results from an inherent risk depends on the factual circumstances of each case.[3] *See Dillworth v. Gambardella,* 970 F.2d 1113, 1119–20 (2d Cir.1992) (whether risk is an inherent one must ordinarily be resolved by jury in absence of legislative specification of such risks); *Sanchez v. Sunday River Skiway Corp.,* 810 F.Supp. 17 (D.Me.1993) (in absence of legislative specification of inherent risks, whether a stump in the trail was a risk posed by an inherent danger was a question of fact precluding summary judgment); *see also Hiibschman v. City of Valdez,* 821 P.2d 1354, 1360 (Alaska 1991)(whether ski jump on beginner's trail created an inherent risk was a question of fact for the jury when jumps were not specifically mentioned in the applicable statute); *Estate of Frant v. Haystack Group, Inc.,* 162 Vt. 11, 641 A.2d 765, 770–71 (1994) (whether wooden

---

3. We do not decide or anticipate the effect of the list of inherent risks provided by section 488's successor, 32 M.R.S.A. § 15217 (Supp.1996). That statute is not at issue in this case. Nor do we suggest that the court can never decide, as a matter of law, that a skier's injury resulted from an inherent risk. *See, e.g., Swenson v. Sunday River Skiway Corp.,* 79 F.3d 204, 206 (1st Cir. 1996) (summary judgment for ski area affirmed when moguls that caused skier's injuries were inseparable characteristic of ski trail and an inherent risk of skiing).

corral posts created obvious and necessary risk was a question of fact for the jury when legislature avoided cataloguing fact-specific examples of obvious and necessary risks inherent in sports such as skiing).

[¶ 8] In this case, the skiers stated that the trail appeared to be groomed and safe for skiing on both sides of the bamboo poles and that the ditch was not visible until they were within a few feet of it. Viewing the evidence in the light most favorable to Merrill, the court erred in deciding as a matter of law that the drainage ditch posed a risk inherent in the sport of skiing. In the circumstances present here, the factfinder could rationally conclude that the ditch did not create an inherent danger. Sugarloaf's attempt to warn skiers about the ditch by placing crossed bamboo poles above it evidences Sugarloaf's recognition that skiers would not expect to encounter such a change in terrain on a trail. Furthermore, the factfinder could conclude that the crossed bamboo poles negligently signalled to skiers that they could safely ski on either side of the poles. The facts do not so conclusively preclude recovery by Merrill that a judgment in favor of Sugarloaf is the only possible result as a matter of law. *Binette*, 688 A.2d at 901.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

