1999 ME 45

**Christina HANSEN, Personal Representative of the Estate of Andrew Hansen**

v.

**SUNDAY RIVER SKIWAY CORPORATION.**

Supreme Judicial Court of Maine.

Argued Oct. 7, 1998.

Reargued Feb. 4, 1999.

Decided March 11, 1999.

221

William D. Robitzek (orally), Paul F. Macri, Berman & Simmons, P.A., Lewiston, for plaintiff.

Evan M. Hansen (orally), Elizabeth J. Wyman, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, for defendant.

Before WATHEN, C.J. and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Sunday River Skiway Corporation ("Sunday River") appeals from the judgment entered in the Superior Court (Oxford County, *Delahanty, J.*) on a jury verdict finding that its negligent operation or maintenance of a ski slope was a cause of Andrew Hansen's injuries and death. Sunday River argues that it is entitled to judgment as a matter of law because Hansen's injuries and death resulted from the inherent risks of skiing and 26 M.R.S.A. § 488 (1988)[1] prevents recovery for injuries and death resulting from such risks. Sunday River also contends that the court did not instruct the jury properly about the inherent risks of skiing and improperly placed the question regarding the inherent risks of skiing last on the

---

1. 26 M.R.S.A. § 488 (1988) provides:

It is hereby recognized that skiing as a recreational sport and the use of passenger tramways associated therewith may be hazardous to skiers or passengers, regardless of all feasible safety measures which can be taken. Therefore, each skier shall have the sole responsibility for knowing the range of his own ability to negotiate any slope or ski trail, and it shall be the duty of each skier to conduct himself within the limits of his own ability, to maintain control of his speed and course at all times while skiing, to heed all posted warnings and to refrain from acting in a manner which may cause or contribute to the injury of himself or others. Except as otherwise specifically provided in this subchapter, each skier who participates in the sport of skiing shall be deemed to have assumed the risk of the dangers inherent in the sport and assumed the legal responsibility for any injury to his person or property arising out of his participation in the sport of skiing, unless the injury or death was actually caused by the negligent operation or maintenance of the ski area by the ski area operator, its agent or employees. Except as provided in this section, the responsibility for collisions by any skier while actually skiing, with any person or object, shall be solely that of the skier or skiers involved in the collision and not of the ski area operator. This section shall not prevent the maintenance of an action against a ski area operator for the negligent design, construction, operation or maintenance of a tramway.

This statute was repealed, P.L.1995, ch. 560, § H–9 (effective October 1, 1996), and replaced by 32 M.R.S.A. § 15217 (Supp.1996). The amended version of the ski statute, 32 M.R.S.A. § 15217, does not govern this case because the case arose prior to the amended statute's effective date.

special verdict form. We affirm the judgment.

[¶ 2] On January 28, 1993, Hansen and five friends skied at Sunday River. They considered themselves to be expert skiers. After they warmed-up with some easier runs, they decided to ski the White Heat Trail. The "double diamond" trail signs and maps labelled White Heat Trail as an expert trail and advised skiers to "use extra caution" on these types of trails. Two ski patrollers who had opened the trail that morning had placed a "caution" sign at the top of the trail. In addition, ski patrol members testified that they had placed a bamboo tripod and poles above a change in the pitch of terrain or "breakover" to emphasize the need to use caution because a large patch of much harder packed snow/ice lay below the breakover where it could not be seen. None of the skiers with Hansen reported seeing the bamboo poles or other warnings.

[¶ 3] Hansen lost control, slipped, fell, and slid into a tree when he crossed over the breakover and encountered the icy/hardpack surface. The injuries that Hansen sustained proved to be fatal and he died in a hospital several days later.

[¶ 4] Christina Hansen, as personal representative of Hansen's estate, brought an action alleging that Sunday River was negligent and liable for Hansen's injuries and death. The jury found Sunday River negligent and awarded damages of $600,000. Sunday River moved for judgment as a matter of law, contending that Hansen's injuries and death were the result of an inherent risk of skiing and were not caused by its negligent operation and maintenance of the ski area. Sunday River also moved for a new trial on the grounds that the court gave improper jury instructions and improperly placed the question of inherent risk last on the special verdict form. The trial court denied these motions. This appeal followed.

## Jury Fact Finding

[¶ 5] We will not set aside a jury verdict unless no reasonable view of the evidence could sustain the verdict or it is prejudicially affected by error in instruction or rulings on evidence. We view the evidence and all justifiable inferences to be drawn from it in the light most favorable to the verdict. *See* M.R.Civ.P. 50(a), (b); *Townsend v. Chute Chem. Co.*, 1997 ME 46, ¶ 8, 691 A.2d 199, 202.

[¶ 6] We have previously addressed many of the issues present in this case in interpreting section 488 in *Merrill v. Sugarloaf Mountain Corp.*, 1997 ME 180, 698 A.2d 1042. The key facts of *Merrill* and this case are similar for purposes of analysis of the legal issues:

—Expert skiers skiing a "trail marked as an expert trail."

—Bamboo poles placed in or near the trail and intended to warn of a change in the slope or surface of the trail.

—Uncertainty as to whether the poles misled skiers regarding the condition at issue.

—The injured skier then skiing into a change of slope and surface (in *Merrill* ungroomed snow and a drainage "depression", and in *Hansen* a very large patch of ice or hardpack snow wholly obscured by a breakover).

—A resulting fall and injury.

On those facts in *Merrill* we overturned summary judgment, ruling that:

Whether Merrill's injuries were caused by risks inherent in the sport of skiing is a question of fact that must be submitted to the jury. Section 488 does not specify what risks, as a matter of law, are inherent in skiing. In the absence of such statutory specification, whether a skier's injury results from an inherent risk depends on the factual circumstances of each case.

*Merrill*, 1997 ME 180, ¶ 7, 698 A.2d at 1044 (footnote omitted).

We went on to observe that:

[T]he factfinder could conclude that the crossed bamboo poles negligently signalled to skiers that they could safely ski on either side of the poles.

*Id.* ¶ 8, 698 A.2d at 1044.

[¶ 7] The *Hansen* jury was instructed three months after *Merrill*, and with the

teachings of *Merrill* well in mind. As in *Merrill,* the jury could have inferred that inadequately placed warning poles may have led skiers to believe that skiing was safe where in fact it was unsafe. Thus the decision was properly left to the jury in accordance with our opinion in *Merrill.*

### Jury Instructions

[¶ 8] Sunday River argues that it is entitled to a new trial because the court gave improper jury instructions. It contends that the court should not have given an instruction on negligent undertaking. It also contends that the court should have given an instruction that the plaintiff had the burden of proving that an inherent risk of skiing did not cause the injuries and death.

■ [¶ 9] A court has not committed reversible error if it gives jury instructions that are substantially correct and if the jury understands the legal situation. *See Thompson v. Pendleton,* 1997 ME 127, ¶ 13, 697 A.2d 56, 59 (quoting *Adamatic v. Progressive Baking Co., Inc.,* 667 A.2d 871, 874 (Me.1995)); *Rich v. Fuller,* 666 A.2d 71, 76 (Me.1995).

■ [¶ 10] The trial court appropriately instructed the jury, as indicated by *Merrill,* that Sunday River could be found liable if it undertook to mark dangers on its trails, misled skiers by that undertaking, and that misleading marking was a cause of Hansen's death.

■ [¶ 11] The trial court also did not commit reversible error by refusing to give a specific instruction that the plaintiff had the burden of proving that Hansen's injuries and death did not result from an inherent risk of skiing. Although the instructions that the court ultimately gave could have been more precise, they were substantially correct statements of the law that explained the legal situation to the jury. The court never shift-ed the burden of proof on the inherent risk issue from the plaintiff to Sunday River. It instructed the jury that the plaintiff had the burden of proving that Sunday River's negligence entitled the plaintiff to recovery. Since the court did not shift the burden on this issue, we need not address the question of which party under section 488 should have the burden of proving that the injuries and death did or did not result from an inherent risk. In this case, the trial court correctly instructed the jury that Sunday River had the burden of proving Andrew Hansen's comparative fault.[2]

[¶ 12] Section 488 presents a challenge in terms of instructing the jury. Sunday River's practice in requesting jury instructions promoted confusion rather than clarity.[3] Although the court's instructions lacked the precision that Sunday River now seeks, the instructions are adequate and are free from preserved error.

### Special Verdict Form

■ [¶ 13] Sunday River argues that it is entitled to a new trial because the court placed the question about the inherent risks of skiing last, rather than first, on the special verdict form. A trial court has broad authority in drafting special verdict forms. *See Williams v. Inverness Corp.,* 664 A.2d 1244, 1247 (Me.1995); *Cole v. A.J. Cole & Sons, Inc.,* 567 A.2d 1342, 1343 (Me.1989). The sufficiency of a special verdict form is reviewed in the context of the entire jury charge. *See State v. Wright,* 531 A.2d 1270, 1271 (Me.1987).

■ [¶ 14] Although it would have been better practice to follow the order of proof established by section 488 and place the inherent risks of skiing question first on the special verdict form, the court did not commit reversible error in its placement of the

---

2. Generally the party opposing a claim, usually a defendant, has the burden of proof on an issue characterized as an affirmative defense or other issues to avoid or reduce liability. *See, e.g., Lovely v. Allstate Ins. Co.,* 658 A.2d 1091, 1094 (Me. 1995) (Lipez, J., concurring) (damage reduction); *Minott v. F.W. Cunningham & Sons,* 413 A.2d 1325, 1331 (Me.1980) (comparative fault); *Isaacson v. Husson College,* 297 A.2d 98, 106–07 (Me. 1972) (comparative fault); *Corbett v. Curtis,* 225 A.2d 402, 409 (Me.1967) (assumption of the risk).

3. Sunday River's instruction requests to the court included 18 separate suggested formulations for the section 488 instruction. In the course of proposing instructions, Sunday River urged that virtually all of these be used in various combinations.

questions on the special verdict form. The court gave the instructions necessary to enable the jury to make its findings on each issue, and the special verdict form presented all the relevant issues. No evidence exists to show that the jury misunderstood the verdict form or the court's instructions. *See Williams,* 664 A.2d at 1247; *Cole,* 567 A.2d at 1343.

The entry is:

Judgment affirmed.

