2000 ME 16

James MERRILL

v.

SUGARLOAF MOUNTAIN CORPORATION.

Supreme Judicial Court of Maine.

Argued Jan. 4, 2000.

Decided Feb. 3, 2000.

---

Evan M. Hansen (orally), Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, for defendant.

Before WATHEN, C.J., and

CLIFFORD, RUDMAN, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶1] James Merrill appeals the judgment of the Superior Court (Penobscot County, *Kravchuk, C.J.*) entered on a jury verdict finding that the injuries sustained by Merrill while skiing at Sugarloaf Mountain were not caused by the negligent acts or omissions of Sugarloaf Mountain Corporation, but rather by risks inherent in the sport of skiing. Merrill's primary argument on appeal is that the trial court erred by instructing the jury that to recover on his negligence claim he bore the burden of proving that his injuries were not caused by a danger inherent in the sport of skiing pursuant to 26 M.R.S.A. § 488. *See* 26 M.R.S.A. § 488 (1988), *repealed by* P.L. 1995, ch. 560, § 9 (effective October 1, 1996).[1] Because the jury instructions misapplied the burden of proof at issue in this case, we vacate.

## I. CASE HISTORY

N. Laurence Willey Jr. (orally), Ferris, Dearborn & Willey, Brewer, for plaintiff.

[¶2] The record indicates the following case history. On December 26, 1993,

---

1. 26 M.R.S.A. § 488 provides:

It is hereby recognized that skiing as a recreational sport and the use of passenger tramways associated therewith may be hazardous to skiers or passengers, regardless of all feasible safety measures which can be taken. Therefore, each skier shall have the sole responsibility for knowing the range of his own ability to negotiate any slope or ski trail, and it shall be the duty of each skier to conduct himself within the limits of his own ability, to maintain control of his speed and course at all times while skiing, to heed all posted warnings and to refrain from acting in a manner which may cause or contribute to the injury of himself or others. Except as otherwise specifically provided in this subchapter, each skier who participates in the sport of skiing shall be deemed to have assumed the risk of the dangers inherent in the sport and assumed the legal responsibility for any injury to his person or property arising out of his participation in the sport of skiing, unless the injury or death was actually caused by the negligent operation or maintenance of the ski area by the ski area operator, its agents or employees. Except as provided in this section, the responsibility for collisions by any skier while actually skiing, with any person or object, shall be solely that of the skier or skiers involved in collision and not that of the ski area operator. This section shall not prevent the maintenance of an action against a ski area operator for the negligent design, construction, operation or maintenance of a tramway.

26 M.R.S.A. § 488 (1988), *repealed by* P.L. 1995, ch. 560, § 9 (effective October 1, 1996). This statute was replaced by 32 M.R.S.A. § 15217 (Supp.1996).

James Merrill and three friends went skiing at Sugarloaf Mountain, owned and operated by the Sugarloaf Mountain Corporation (Sugarloaf). In the afternoon, the four friends skied down the Skidder Trail, an expert trail along its upper course and an intermediate trail along its lower course. The lower, intermediate portion of the Skidder Trail is intersected by another trail called the Peavey Crosscut, near where the trail is crossed by a water bar.

[¶ 3] Peter McKendry, Sugarloaf's ski patrol director, testified that the water bar is a portion of a stream bed that meanders down Sugarloaf Mountain. Sugarloaf constructed the water bar to channel water across the trail so that it would not run down the trail washing out the snow in its path. When there is no snow, the water bar appears as a ditch lined with rocks. Although the water bar is a few feet deep, it gradually fills in with snow in the winter. According to McKendry, the water running in the water bar does not typically freeze until mid-January and, until it does, the water passing through the ditch washes out snow that falls on it, leaving a wet depression or slight ditch across an otherwise snow-covered trail. McKendry testified that the water bar is a naturally recurring condition that Sugarloaf monitors and marks according to the relative size of the depression. He testified that there are "a hundred or more" water bars on the mountain.

[¶ 4] On the day in question, Sugarloaf had marked the Peavey Crosscut water bar with two crossed bamboo poles atop the depression. There was approximately 25 feet of open trail to the left of the poles and approximately 15 feet to the right. According to Merrill, he skied to the right of the bamboo poles assuming the way was clear, entered a washed out portion of the water bar, lost control, fell, and shattered his right leg near the ankle joint.

[¶ 5] Before submitting the case to the jury, the court instructed the jury, over Merrill's objection:

In this case, James Merrill alleges that Sugarloaf Mountain Corporation negligently caused his injuries. In order to prevail on this claim, James Merrill must prove by a preponderance of the evidence that his injuries were not caused by risks inherent in the sport of skiing and that Sugarloaf Mountain Corporation was negligent in the operation or maintenance of the ski area. . . .

Thus, the court required Merrill to assume a double burden of proof: first, to prove the negative of inherent risk and, second, to prove the affirmative of negligence, in order to demonstrate causation. The jury returned a verdict in favor of Sugarloaf, answering "no" to the following first question on the verdict form:

1. If James Merrill's injuries were not the result of an inherent risk of skiing, was Sugarloaf Mountain Corporation negligent in the operation and/or maintenance of its ski trails, and was its negligence an actual cause of James Merrill's injuries?

Merrill's motions for judgment as a matter of law and a new trial were denied by the court. Merrill filed a timely appeal to this Court.

## II. DISCUSSION

[¶ 6] This is the second time this case has been before us. *See Merrill v. Sugarloaf Mountain Corp.*, 1997 ME 180, 698 A.2d 1042 (*Merrill I*). In *Merrill I*, we vacated the entry of summary judgment against Merrill concluding that the court had "erred in deciding as a matter of law that the drainage ditch posed a risk inherent in the sport of skiing." *Id.*, ¶ 8 at 1045. In the way *Merrill I* was postured, we held that whether Merrill's injuries were caused by an inherent risk was "a question of fact that must be submitted to the jury" and that the facts could allow the jury to find that the water bar was not an inherent danger or that Sugarloaf had negligently signalled skiers that they could safely ski to either side of the bamboo poles. *See id.*

[¶ 7] After the trial that generates this appeal, we decided *Hansen v. Sunday River Skiway Corp.*, 1999 ME 45, 726 A.2d 220. In *Hansen,* Sunday River appealed from the judgment of the Superior Court entered on a jury verdict adverse to Sunday River. *See id.,* ¶ 1 at 221. Sunday River argued that the court's judgment must be vacated because, *inter alia,* the court had failed to instruct the jury that the plaintiff[2] had the burden of proving that the decedent's injuries were not caused by an inherent risk of skiing pursuant to 26 M.R.S.A. § 488. *See id.,* ¶ 8 at 223. We affirmed the judgment, holding that the court had adequately instructed the jury that the plaintiff must prove that Sunday River's negligence entitled it to recovery. *See id.,* ¶ 11.

[¶ 8] Section 488 of Title 26 states in pertinent part that "each skier . . . shall be deemed to have assumed the risk of the dangers inherent in the sport . . . unless the injury or death was actually caused by the negligent operation or maintenance of the ski area by the ski area operator. . . ." 26 M.R.S.A. § 488 (1988). Pursuant to this repealed statute, Maine's ski slope operators could only be liable for a skier's injuries or death if the injuries or death were caused by the operator's negligent operation or maintenance of the ski area.

[¶ 9] Sugarloaf argues that section 488 provides ski slope operators with a "primary" assumption of the risk defense. Generally, primary assumption of the risk describes a situation in which the defendant is held to owe the plaintiff no duty because the plaintiff has assumed the risk of his voluntary activities. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS, § 68 at 480–81 & 496–97 (5th

ed.1984). In contrast, secondary assumption of the risk describes a situation in which the defendant's negligence is already established, but the plaintiff has proceeded voluntarily to encounter it. *See id.* at 481. According to Sugarloaf, primary assumption of the risk is a defense that shifts the burden of proof to the plaintiff to prove that he or she did not assume the risk. However, prior to enactment of our comparative fault law, we held in a primary assumption of the risk context that assumption of the risk is an affirmative defense with the burden of proof on the defendant.[3] *See Corbett v. Curtis,* 225 A.2d 402, 409 (Me.1967). In the context of a skiing injury, Sugarloaf contends that section 488 gives ski slope operators an absolute defense unless the skier overcomes the burden of proof that his or her injuries were not proximately caused by dangers inherent in the sport of skiing.

[¶ 10] Sugarloaf's argument is derived from a group of cases construing Vermont's Sports Injury Statute. *See Estate of Frant v. Haystack Group, Inc.,* 162 Vt. 11, 641 A.2d 765, 769 (1994) (construing Vermont's Sports Injury Statute as providing a primary assumption of the risk defense); *Sklar v. Okemo Mountain, Inc.,* 877 F.Supp. 85, 88 (D.Conn.1995) (assigning the burden of proof on the primary assumption of the risk issue to plaintiff). The language of the Vermont Sports Injury Statute is different from the language of section 488. *See* Vt. Stat. Ann. tit. 12, § 1037 (1991) ("[A] person who takes part in any sport accepts as a matter of law the dangers that inhere therein insofar as they are obvious and necessary.").

[¶ 11] Unlike the language used by the Vermont Legislature, the plain lan-

---

**2.** The plaintiff in *Hansen* was the personal representative of the Estate of Andrew Hansen.

**3.** Generally, the passage of comparative fault statutes, *see, e.g.,* 14 M.R.S.A. § 156 (1980), has led to abandonment of the assumption of the risk defense. *See, e.g., Wilson v. Gordon,* 354 A.2d 398, 403 (Me.1976) (holding that Maine's comparative fault statute supplanted

the "voluntary" assumption of the risk defense without distinction between its primary and secondary varieties). Although assumption of the risk remains in our jurisprudence, *see* M.R. Civ. P. 8(c), it does so in only limited form. *See Wilson,* 354 A.2d at 401 (distinguishing contractual assumption of the risk from voluntary assumption of the risk).

guage of section 488 does not support the application of a primary assumption of the risk defense. The most fundamental rule of statutory construction is the plain meaning rule. When statutory language is plain and unambiguous, there is no need to resort to any other rules of statutory construction. *See State v. Harris*, 1999 ME 80, ¶ 13, 730 A.2d 1249, 1251. Section 488 provides that skiers are *"deemed* to have assumed the risk" if their injuries or deaths are caused by inherent dangers *"unless"* they can prove negligent operation or maintenance by the ski slope operator. 26 M.R.S.A. § 488 (emphasis added). Section 488 does not provide a primary assumption of the risk defense like the one given in the Vermont statute, it also lacks any language that adds proof of the nonexistence of an inherent risk to the elements of a skier's negligence claim. Thus, section 488 establishes a relatively simple and straightforward process: first, it protects ski area operators from strict liability claims that otherwise might arise from allegations that ski area operation is an inherently dangerous activity;[4] second, it states that establishing liability requires an injured skier to prove that their damages have been "caused by the negligent operation or maintenance of the ski area."

■ [¶ 12] For liability to attach, the plaintiff skier must affirmatively prove negligence, but need not disprove inherent risk. A defendant ski slope operator may rely on the plaintiff's burden to prove negligence and causation by a preponderance of the evidence and assert that plaintiff has failed to meet that burden. However, if the defendant ski slope operator goes beyond relying on plaintiff's burden of proof to assert affirmatively that plaintiff's damages were caused not by defendant's negligence, but by some other causative

factor, be that inherent risk,[5] independent intervening event,[6] comparative fault,[7] or any other theory, the burden shifts to the defendant to prove by a preponderance of the evidence that the other condition or factor caused the plaintiff's damages in whole or in part. *See Lovely v. Allstate Insurance Co.*, 658 A.2d 1091, 1093–94 (Me.1995) (Lipez, J., concurring); *Minott v. F.W. Cunningham & Sons*, 413 A.2d 1325, 1331 (Me.1980); *Corbett*, 225 at 409. This occurs because the party asserting the affirmative of an issue normally bears the burden of proof on the issue, even if they are not nominally the plaintiff in an action. *See Dowley v. Morency*, 1999 ME 137, ¶ 11, 737 A.2d 1061, 1066; *Markley v. Semle*, 1998 ME 145, ¶ 5, 713 A.2d 945, 947.

■ [¶ 13] Whether to assume such a burden or rely on the plaintiff's burden of proof on causation is a matter of defendant's choice and trial strategy. But a defendant who chooses to affirmatively claim causation by inherent risk must prove it by a preponderance of the evidence.

■ [¶ 14] "We will not set aside a jury verdict unless no reasonable view of the evidence could sustain the verdict or it is prejudicially affected by error in instruction or rulings on evidence." *Hansen*, 1999 ME 45, ¶ 5, 726 A.2d at 222. We review jury instructions in their entirety for legal error. *See Dumont v. Shaw's Supermarkets, Inc.*, 664 A.2d 846, 847 (Me. 1995). A jury instruction error is reversible if it results in prejudice. *See id.* The trial court's instruction that Merrill had the burden to disprove causation by the dangers inherent in the sport of skiing

---

4. *See* Simmons, Zillman & Gregory, *Maine Tort Law* § 14.05 (1999) (discussing strict liability in cases involving abnormally dangerous activities).

5. *See* 26 M.R.S.A. § 488.

6. *See Ames v. Dipietro–Kay Corp.*, 617 A.2d 559, 561 (Me.1992); *Johnson v. Dubois*, 256 A.2d 733, 734 (Me.1969).

7. *See* 14 M.R.S.A. § 156 (1980); *Jackson v. Frederick's Motor Inn*, 418 A.2d 168 (Me. 1980).

improperly shifted the burden of proof to Merrill and constituted prejudicial error.

[¶ 15] Because the court's jury instruction error requires vacating the judgment, we address some of Merrill's other arguments on issues that appear likely to recur on remand.

[¶ 16] Merrill argues that the court erred by not giving his proposed instructions that Sugarloaf has a duty to protect the public from a recurring dangerous condition and to protect skiers from unseen hazards by adequately warning of or removing the hazard. Such an instruction may be inconsistent with the intended immunity from liability for inherent risks provided by section 488. A party is only entitled to a jury instruction if it correctly states the law, is supported by the facts, is not misleading, and is not already covered by the court's instruction. *See Dumont,* 664 A.2d at 847. So long as the court has given a jury instruction that is substantially correct and conveys to the jury an understanding of the legal situation, the court will not have committed reversible error. *See Hansen,* 1999 ME 45, ¶ 9, 726 A.2d at 223. The court adequately addressed the law when it charged that

> Even if a condition of the trail ... should be apparent to persons on the ski trail, if ... the condition is not an inherent risk of skiing, the owner of the trail has a duty to warn of or take other reasonable action to correct or avoid the condition if the owner should anticipate that persons using the trail will nevertheless encounter the condition.

[¶ 17] Merrill also argues that the court's jury instruction was insufficient because it did not provide examples of the inherent risks of skiing.[8] Section 488 does not define "inherent risks." In *Merrill I,* we held that "whether a skier's injury results from an inherent risk depends on the factual circumstances of each case." *Merrill I,* 1997 ME 180, ¶ 7, 698 A.2d at

1044–45. It was not error for the court to omit examples of inherent risks from its jury instruction.

[¶ 18] Merrill also contends that the court erred by refusing to let him impeach a defense witness regarding the addition of four poles to the right of the crossed poles following Merrill's accident and by not allowing in evidence a photograph taken four days after the accident that depicted the four new poles. This issue arose at trial when Richard Wilkerson, Sugarloaf's Director of Mountain Operations, testified that Sugarloaf did not think it was necessary to mark the water bar hazard on the day of Merrill's injury with anything more than the two poles it had used.

[¶ 19] Maine Rule of Evidence 407(a) provides:

> (a) Subsequent Remedial Measures. When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction.

M.R. Evid. 407(a). Rule 407 explicitly prohibits plaintiffs from proving negligence or culpable conduct through evidence of subsequent remedial measures. Although it could be permissible for the court to admit Sugarloaf's subsequent remedial measures for impeachment of evidence offered by Sugarloaf, neither Wilkerson nor any other Sugarloaf witness denied the existence of subsequent remedial measures. Nevertheless, Merrill contends that Sugarloaf opened the door for him to introduce the subsequent remedial measures evidence when Sugarloaf introduced in evidence certain photographs depicting Skidder Trail at the Peavey Crosscut taken five days after the accident, when approximately

---

8. For example, Merrill suggests thin and bare terrain, ungroomed trails, and moguls.

four inches of additional snow had fallen.[9] However, when the photos were introduced, the court advised the jury that the photos, like those photos offered by Merrill,[10] were not taken on the same day as the accident and that the jury must draw its own conclusions as to the actual conditions on December 26, 1993, based on witness testimony.

[¶ 20] The trial court has broad discretion to determine whether proffered evidence is relevant. *See Moody v. Haymarket Assoc.*, 1999 ME 17, ¶ 4, 723 A.2d 874, 875; *Latremore v. Latremore*, 584 A.2d 626, 631 (Me.1990). Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R. Evid. 401. It was within the court's discretion to admit Sugarloaf's after-the-fact photographs because the court could have determined that the photographs, depicting the crossed bamboo poles, tended to make the existence of an adequate warning more or less probable than it would otherwise have been. Particularly given the court's limiting instruction, we cannot say that the court erred by admitting the photos, but not allowing the subsequent remedial measures evidence.

[¶ 21] Merrill next argues that he should have been able to impeach Wilkerson's testimony as to the lack of need for more warning poles on the day of Merrill's injury with evidence that another young man was injured by the same water bar a few days later. The only reason Merrill provides for why another skier's injury at the same locale should be admitted is for impeachment purposes. Although we have held that "evidence of other similar accidents or occurrences" may be relevant circumstantial evidence tending to establish the existence of a dangerous condition,

notice on the part of the defendant, or causation on the occasion in question, *see Moody*, 1999 ME 17, ¶¶ 4 & 6, 723 A.2d at 875; *Simon v. Kennebunkport*, 417 A.2d 982, 984–85 (Me.1980), such evidence is not admissible for impeachment purposes when no evidence suggested that other accidents did not occur. *See Moody*, 1999 ME 17, ¶ 7, 723 A.2d at 876 (holding that evidence of a lack of other accidents over a 10-year period was not relevant to whether there was negligence on a particular day).

[¶ 22] Merrill next argues that Victor Craft, his investigator, should have been allowed to testify pursuant to M.R. Evid. 801(d)(2), that Audrey Adams, a member of the ski patrol and the First Aid Department at Sugarloaf, admitted to him that she would not ski Skidder Trail because she "values her knees and safety." The court excluded the evidence on relevance grounds. Because Merrill could not explain why Adams's statement was relevant to the issue of whether Sugarloaf negligently maintained or operated its ski slope on the date of Merrill's injury, the court did not err by excluding this testimony.

[¶ 23] Merrill finally contends that it was error for the court to allow Sugarloaf to use an illustrative aid depicting unrelated areas of the ski slope for the purpose of educating the jury on the difference between groomed and ungroomed snow conditions. Use of an illustrative aid is within the trial court's discretion. *See* M.R. Evid. 616(b); *Irish v. Gimbel*, 2000 ME 2, ¶ 9, 743 A.2d 736; *Irish v. Gimbel*, 1997 ME 50, ¶ 14, 691 A.2d 664, 671–72. An objecting party has the burden of demonstrating that the trial court abused its discretion and prejudiced that party by its ruling. *See Todd v. Andalkar*, 1997 ME 59, ¶ 7, 691 A.2d 1215, 1218. Merrill does

---

9. The additional bamboo poles were airbrushed out of these pictures.

10. Merrill introduced photos depicting the water bar as it appears in the summer as a deep ditch lined with large rocks and boulders.

not convincingly explain in his brief how this display may have prejudiced him.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.